**Revised January 29, 1999**

**UNITED STATES COURT OF  APPEALS**

**FOR THE FIFTH CIRCUIT**

NO. 97-50734

ROBERT HOOVER, Doctor;
TEXAS FACULTY ASSOCIATION,

Plaintiffs-Appellees

VERSUS

DAN MORALES, individually and in his official
capacity as Attorney General of the State of Texas;
BARRY THOMPSON, Doctor in his official capacity as
Chancellor of the Texas A&M University System,

Defendants-Appellants,

Appeal from the United States District Court
For the Western District of Texas

December 31, 1998

Before REAVLEY, DeMOSS and PARKER, Circuit Judges.

PARKER, Circuit Judge:

We *sua sponte* withdraw our prior opinion, *Hoover v. Morales*,
146 F.3d 304 (5th Cir. 1998), and substitute the following:

**I.**

**FACTS & PROCEDURAL HISTORY**

At issue in this case are two Texas state policies, one

legislative and one administrative, which have the effect of prohibiting state employees from acting as consultants or expert witnesses on behalf of parties opposing the State in litigation. The first such policy is Texas A & M University System ("TAMUS") policy No. 31.05, which prohibits university professors from taking employment as consultants or expert witnesses when doing so would create a conflict with the interests of the State. The second policy is in the form of an "expert witness rider" attached to the Texas Legislature's 1997 appropriations bill. The rider provides:

> Because of an inherent conflict of interest, none of the funds appropriated by this Act shall be expended in payment of salary, benefits, or expenses of any state employee who is retained as or serves as an expert witness or consultant in litigation against the state, unless the state employee serves in that capacity on behalf of a state agency on a case in which the state agency is in litigation against another state agency.

Appropriations Act 1997-99, art. IX, § 2(5); Tex. Sess. Law Serv. at 6352.

Certain professors, who have been retained or have volunteered on a *pro bono* basis to testify in various litigation against the State,[1] and the Texas Faculty Association filed suit under § 1983

---

[1]E.g.: Prof. Robert Hoover, Dr. Finis Welch and Dr. Cecil Reynolds of Texas A & M have been retained as expert witnesses for the defense in the

against the Texas Attorney General and the TAMUS Chancellor, seeking to enjoin enforcement of the "expert witness rider" and TAMUS policy No. 31.05, on the grounds that these policies offend the First Amendment and the Equal Protection clause of the Fourteenth Amendment. The district court granted the plaintiffs' requested preliminary injunction and the State appeals. The State argues that the district court should have abstained from deciding the merits of the constitutional challenge under the *Pullman* doctrine. Alternatively, the State argues that the district court abused its discretion by granting the preliminary injunction on the merits.

## II.

### LAW & ANALYSIS

### A.

### Standard of Review

A preliminary injunction is an extraordinary equitable remedy that may be granted only if the plaintiff establishes four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury

---

State of Texas law suit against various tobacco companies; Prof. Frank Skillern of the Texas Tech University School of Law has volunteered his services on a pro bono basis to members of a Lubbock, Texas, neighborhood association opposing state permitting of a nearby incinerator.

outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. These four elements are mixed questions of law and fact. Accordingly, we review the factual findings of the district court only for clear error, but we review its legal conclusions *de novo*. Likewise, although the ultimate decision whether to grant or deny a preliminary injunction is reviewed only for abuse of discretion, a decision based on erroneous legal principles is reviewed *de novo*.

*Sunbeam Products, Inc. v. West Bend Co.*, 123 F.3d 246, 250 (5th Cir. 1997), *citing Blue Bell Bio-Medical v. Cin-Bad, Inc.*, 864 F.2d 1253, 1256 (5th Cir. 1989). All the arguments on this appeal concerning the merits of the preliminary injunction focus on the first element--likelihood of success on the merits of the constitutional challenge.

### B.

### Abstention

*Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S. Ct. 643, 85 L. Ed. 971 (1941), established that federal courts should not determine the federal constitutional implications of state law when that law has not yet been authoritatively construed by the state courts, and the law could be given a construction by

the state courts which would avoid the constitutional dilemma. *See Word of Faith World Outreach Center Church, Inc. v. Morales*, 986 F.2d 962, 967 (5th Cir. 1993). The State argues that there are two such open questions under the "expert witness rider" which are in need of authoritative state court interpretation before a federal court can address its constitutional implications, i.e., whether the rider applies to *pro bono* expert testimony, and whether the rider applies to expert testimony against political subdivisions of the State, as opposed to the State directly.[2]

Abstention is inappropriate in this case, because the constitutional overbreadth problem posed by the expert witness rider cannot be avoided by any interpretation which its language will bear.

## C.

### Is Speech Still Free If You Get Paid For It?

There is a side-debate in this case about whether testimony by a state employee acting as a paid expert witness is "commercial speech" or just "speech". The difference is critical, as commercial speech is generally less protected. *Central Hudson Gas & Elec. Corp. v. Public Service Commission*, 447 U.S. 557, 563, 100 S. Ct. 2343, 2350, 65 L. Ed. 2d 341 (1980). In this case, we are

---

[2]The State concedes that the district court properly reached the merits of TAMUS policy No. 31.05 and of the "expert witness rider" to the extent that the rider prohibits state employees from acting as paid expert witnesses in litigation against the state directly. Appellant's Brief, pp. 24-26.

dealing with just "speech". If all it takes to make speech commercial is that the speaker is paid to say it, then every writer with a book deal, every radio D.J., and every newspaper and television reporter is engaged in commercial speech. "It is well settled that a speaker's rights are not lost merely because compensation is received; a speaker is no less a speaker because he or she is paid to speak." *Riley v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781, 801, 108 S. Ct. 2667, 2680, 101 L. Ed. 2d 669 (1988). Likewise, the fact that one is paid to be an expert witness, does not make his testimony commercial speech. *Central Hudson*, 447 U.S. at 561, 100 S. Ct. at 2349 (defining commercial speech as "expression related solely to the economic interests of the speaker and its audience")(citing cases). Therefore, the defining element of commercial speech is not that the speaker is paid to speak, but rather that the speech concerns the "economic interests of the speaker and its audience." *See, e.g., 44 Liquor Mart, Inc. v. Rhode Island*, 517 U.S. 484, 116 S. Ct. 1495, 134 L. Ed. 2d 711 (1996)(product advertisement), *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 115 S. Ct. 2371, 132 L. Ed. 2d 541 (1995)(solicitation of legal services).

**D.**

### *Pickering* & Its Progeny

> "The problem in any case is to arrive at a
> balance between the interests of the

[employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S. Ct. 1731, 1734-35, 20 L. Ed. 2d 811 (1968).

Thirty years ago in *Pickering*, the Supreme Court distilled a test for governmental restriction of its employees' speech. The test is essentially in two parts. First, the district court must determine whether the State's action or policy restricts the speech of its employees on matters of public concern. *Pickering, supra* at 568; *Connick v. Myers*, 461 U.S. 138, 145-149, 103 S. Ct. 1684, 1689-1691, 75 L. Ed. 2d 708 (1983). If so, then the district court must weigh the interest of the employee in freedom of expression and his audience's legitimate need for access to the information against the government's interest, "as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering, supra* at 568; *Connick, supra* at 142; *Waters v. Churchill*, 511 U.S. 661, 668, 114 S. Ct. 1878, 1884, 128 L. Ed. 2d 686 (1994); *United States v. National Treasury Employees Union*, 513 U.S. 454, 465-466, 115 S. Ct. 1003, 1012, 130 L. Ed. 2d 964 (1995); *Board of County Commissioners v. Umbehr*, 518 U.S. 668,---,

**7**

116 S. Ct. 2342, 2347-48, 135 L. Ed. 2d 843 (1996).

## I.

### Matters of Public Concern

TAMUS policy No. 31.05 and the expert witness rider both have the effect of curtailing speech on matters of public concern in this case. For example, some of the parties in this case have been retained as expert witnesses in the State of Texas suit against the tobacco companies. Although the specific testimony to be offered by the faculty-member plaintiffs may be highly esoteric and of little interest to the public, that testimony bears on the addictive nature of cigarettes/nicotine, its health consequences and resulting public costs, which are matters of public concern. Ultimately, a ban on testimony by state employees in litigation against the State, such as TAMUS Policy No. 31.05, or a refusal to fund the salary and benefits of state employees who testify in litigation against the State, such as the expert witness rider, can be expected to curtail speech on a wide variety of matters of public concern.

### ii.

### The Competing Interests

The plaintiffs' right is generally identified as the right to speak freely on matters of public concern. More specifically, it is the right to serve as (*pro bono*) or be retained as (for hire) an expert witness or consultant in litigation against the State

**8**

(expert witness rider) or when doing so would create a "conflict of interest" with the State (TAMUS policy No. 31.05). Balanced against that, under *Pickering,* is the State's interest "as an employer, in promoting the efficiency of the public services it performs through its employees."

The justification offered by the State is the State's right to prevent its employees from acting contrary to the State's interests. The State argues that an inherent conflict of interest is created by state employees acting as or being retained as consultants or expert witnesses for the opposition in litigation against the State. Since the State has an interest in preventing such conflicts of interest, the expert witness rider and TAMUS policy No. 31.05 are designed to prevent state employees from speaking against the State when doing so would create a conflict with the interests of the State. Boiled down to its core, the State is simply arguing that the State's interest is in preventing state employees from speaking in a manner contrary to the State's interests.

Whatever else we might say about that "justification", the State's amorphous interest in protecting its interests is not the sort which may outweigh the free speech rights of state employees under *Pickering*. The notion that the State may silence the testimony of state employees simply because that testimony is contrary to the interests of the State in litigation or otherwise,

**9**

is antithetical to the protection extended by the First Amendment. The scope of state interests which may outweigh the free speech rights of state employees is much narrower than that. Indeed, the only state interest acknowledged by *Pickering* and its progeny, which may outweigh the right of state employees to speak on matters of public concern, is the State's interest, "as an employer, in promoting the efficiency of the public services it performs through its employees."

In this case, the State has not identified how the State's interest in promoting efficiency of the public services it performs through its employees will be adversely affected by allowing state employees to serve as or be retained as expert witnesses or consultants. We may safely assume that there will be occasions when the State's interest in efficient delivery of public services will be hindered by a state employee acting as an expert witness or consultant, and therefore, the expert witness rider or TAMUS policy No. 31.05 would legitimately curtail that employee's speech. However, the problem with the rider and policy No. 31.05 is the quantity and quality of speech they will curtail, which would not adversely affect the interest of the State in efficient delivery of public services. That is, by their operation, the expert witness rider and TAMUS policy No. 31.05 would likely serve to silence those whose speech would not adversely affect the efficiency of the public services performed by the State through its employees.

10

Specifically, this Court does not see how the expert testimony of the faculty-member plaintiffs in this case will adversely affect the efficient delivery of educational services by the institutions in which these faculty members serve. Even if such an adverse impact might occur, the State has not identified it. The State bears the burden of justifying these restrictions, and when it enacts a "wholesale deterrent to a broad category of expression by a massive number of potential speakers", the burden of justification is indeed heavy. *National Treasury Employees Union*, 513 U.S. at 466-67, 115 S. Ct. at 1013. In this case, the State's burden proved too heavy, and having identified the flaws in the expert witness rider and TAMUS policy No. 31.05, the district court properly enjoined their enforcement.

### E.

### Content-Based Restriction

An additional basis for enjoining enforcement of the expert witness rider and TAMUS policy No. 31.05 is that they draw a distinction between state employee speakers based on the content of the employees' relative speech. The one who testifies as an expert witness or acts as a consultant on behalf of the State is protected. The one who testifies as an expert witness or acts as a consultant on behalf of those who oppose the state in litigation

11

is punished.[3]

"A statute is presumptively inconsistent with the First Amendment if it imposes a financial burden on speakers because of the content of their speech." *Simon & Schuster, Inc. v. New York State Crime Victims Board*, 502 U.S. 105, 115, 112 S. Ct. 501, 508, 116 L. Ed. 2d 476 (1991), *citing Leathers v. Medlock*, 499 U.S. 439, 447, 111 S. Ct. 1438, 1443-44, 113 L. Ed. 2d 494 (1991). *See also R.A.V. v. City of St. Paul*, 505 U.S. 377, 383, 112 S. Ct. 2538, 2542, 120 L. Ed. 2d 305 (1992)(holding that government restriction of otherwise unprotected speech ("fighting words") on the basis of ideas expressed thereby, is unconstitutional content-based regulation). "Regulations which permit the Government to discriminate on the basis of the content of the message cannot be tolerated under the First Amendment." *Id., quoting Regan v. Time, Inc.*, 468 U.S. 641, 648-49, 104 S. Ct. 3262, 3266-67, 82 L. Ed. 2d 487 (1984). Therefore, the district court's decision to enjoin enforcement of the expert witness rider and TAMUS policy No. 31.05 may be justified on this alternative basis as well.

## IV.

## CONCLUSION

The district court properly refused to abstain from addressing

---

[3]It is this discriminatory treatment of state employees based on the content of their speech which prompted the plaintiffs' Equal Protection challenge. Our resolution of the plaintiff's First Amendment claim makes it unnecessary to discuss the merits of plaintiffs' Equal Protection challenge.

12

the constitutionality of the expert witness rider, because no matter how it is construed by the Texas courts, the constitutional problem cannot be avoided. The district court properly granted the preliminary injunction against enforcement of TAMUS policy No. 31.05 and the expert witness rider, because they both will cause the censorship of more speech by state employees than may be justified in order to protect the efficient delivery of public services. Furthermore, the expert witness rider and TAMUS policy No. 31.05 are presumptively impermissible content-based regulations of otherwise protected speech. Therefore, we affirm the district court's decision to enjoin the enforcement of these policies.

As we previously have stated, there may be occasions when the State's interest in efficient delivery of public services will be hindered by a state employee acting as an expert witness or consultant. Certainly the State's interests heighten when the employee happens to be a policy maker. We can hypothesize examples of legislative or administration rules limiting expert testimony which would not violate the First Amendment, including rules regulating outside employment that do not turn on the content of any speech related activity that may be part of the outside employment. Moreover, the opinion should not be taken to decide or draw into question other kinds of rules regulating arguably expressive conduct by public sector employees. *See, e.g., Weaver v. United States Info. Agency*, 87 F.3d 1429 (D.C. Cir. 1996);

13

*Vicksburg Firefighters Assoc., Local 1686 v. City of Vicksburg*, 761 F.2d 1036, 1040 (5th Cir. 1985); *Zook v. Brown*, 865 F.2d 887 (7th Cir. 1989); *Arceneauz v. Treen*, 671 F.2d 128 (5th Cir. 1982). But our task in this case requires us to apply a Pickering case-by-case analysis, and in doing so we conclude that the expert witness rider and TAMUS policy No. 3105 are impermissibly overbroad. Our opinion does not foreclose consideration of rules and regulations aimed at limiting expert testimony of faculty members or other state employees which adhere to our First Amendment jurisprudence.

AFFIRMED.

ENDRECORD

14

DeMOSS, Circuit Judge, specially concurring:


I concur only in the result.

The only issue before this Court is whether the district court abused its discretion by granting a temporary injunction enjoining the enforcement of Texas A & M University System Policy 31.05 and Regulation 31.0501 (the "TAMUS Policy") and the "Expert Witness Rider" attached to the Appropriations Act 1997-99, art. IX, § 2(5) (the "Rider").  The Order of the district court granting that injunction does not address and does not constitute any final determination concerning:

> a.   whether the district court would apply the abstention doctrine of ***Railroad Comm'n of Texas v. Pullman Co.***, 312 U.S. 496, 61 S. Ct. 643, 85 L. Ed. 971 (1941) and ***Word of Faith World Outreach Center Church, Inc. v. Morales***, 986 F.2d 962 (5th Cir. 1993);

> b.   whether the "speech" in this case is "commercial speech";

> c.   whether the speech in this case relates to "matters of public concern";

d. whether a balancing of interest between the rights of the employee and the rights of the state as employer under *Pickering v. Board of Education*, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968) would require a result in favor of plaintiff/appellees;

e. whether the TAMUS policy or the Rider constitute an unconstitutional content based restriction on the free speech rights of the plaintiffs/appellees under *United States v. National Treasury Employees Union*, 513 U.S. 454, 115 S. Ct. 1003 (1995).

Likewise, the district court did not file any findings of fact and conclusions of law on these issues for us to review.

In my view this case raises a serious and fundamental issue not previously decided by the United States Supreme Court or this Court. That is, whether the State of Texas or one of its state universities can prohibit a state employee or a full-time professor at the university from serving as a compensated expert witness against the state when the subject matter of his testimony and the basis of his qualifications as an expert are directly connected with, and are the product of, his employment by the state. That issue was expressly left undecided by the Supreme Court in *National Treasury Employees* and needs far more factual development and legal analysis by the parties and the Court than it has received on the hearing for preliminary injunction.

Our task on this appeal is much narrower than the decision penned by the majority. We are simply to decide whether, based upon the limited evidence presented at this early stage of the litigation, we believe that the district court's decision is so wanting for support that it constitutes an abuse of discretion. I can imagine several reasons why the district court might have found it appropriate to grant an injunction. For example, the expert testimony relationships which are the subject of this case appear to have been entered into prior to the effective date of the Rider; and raise an issue concerning whether the Rider should be retroactively applied against the plaintiffs during the pendency of this suit. Where I differ from the majority is that I would have neither assumed to know the reasoning of the district court nor presumed to include that reasoning in an opinion disposing of the more narrow preliminary injunction question.

Consequently, I concur with the majority that the district court did not abuse its discretion, but I decline to join in the discussion and commentary by the majority relating to matters which, in my view, are not raised by this appeal.