**Roy TRIMBLE, et al.**

v.

**The CITY OF NEW IBERIA.**

**No. Civ.A. 699–803.**

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

Nov. 23, 1999.

---

Marjorie R. Esman, New Orleans, Louisiana, David D. Benoit, Breaux Bridge, LA, William P. Quigley, New Orleans, LA, for plaintiffs.

John F. Wilkes, III, Borne Wilkes et al., Lafayette, LA, for defendant.

### MEMORANDUM RULING

MELANCON, District Judge.

Before the Court is a motion for partial summary judgment filed by the plaintiffs. For the reasons that follow, the motion will be granted.

#### I. Background

The plaintiffs, Roy Trimble, Mary Parrish, Melissa Long and Jane Doe, seek redress for injuries they allegedly suffered as a result of the City of New Iberia's ("City") ban on fortunetelling, palmistry, reading futures and the like. Plaintiffs contend that Sec. 58–3, Code of Ordinances, City of New Iberia[1] ("Ordinance") results in an unlawful censorship of their First Amendment rights to engage in speech concerning their services as fortunetellers and psychic readers and unlawfully interferes with their right to free exercise of religion. *Plaintiffs' Complaint,* ¶ 31, 37. Additionally, plaintiffs maintain that the Ordinance causes a deprivation of their due process rights because it is impermissibly vague and overbroad. *Plaintiffs' Complaint,* ¶ 43. Trimble, Parrish, Long, and anonymous plaintiff Doe practice their skills as psychics, healers, ministers and treaters within the City. Trimble, Parrish and Doe also contend that psychic and spiritual work are integral parts of the practice and teachings of their religion.

The present lawsuit apparently arose out of the closing of Trimble's business, the Candle Shoppe, in the summer of 1998. *Plaintiffs' Complaint,* ¶ 21. The Candle Shoppe, which was located within the City, marketed candles and other items and services related to Trimble's practice as a psychic. At some point in December of 1997, Trimble confronted Anne Stevens, the City Prosecutor, concerning the Ordinance. Plaintiffs allege that Stevens threatened to prosecute Trimble under the Ordinance if he did not discontinue offering physic services. *Plaintiffs' Complaint,* ¶ 15. The City denies a threat of prosecution was ever made. *Defendant's Opposition,* Exhibit A.

Troubled by the perceived threat of prosecution, Trimble requested that the repeal of the Ordinance be considered at the July 7, 1998 hearing of the City Council. *Plaintiffs' Complaint,* ¶ 18. Although the City Council entertained public discussion of the Ordinance at its July 7, 1998 meeting, no action was taken and the Ordinance remains on the books.

Plaintiffs filed the present lawsuit alleging that the failure to repeal the Ordinance has resulted in a loss of their First Amendment freedoms. In conjunction with their suit, plaintiffs filed a motion for partial summary judgment in which they seek to have the Ordinance declared unconstitutional and a permanent injunction issued ordering the City to repeal the Ordinance.

#### II. Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions, and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R.Civ.R. 56.* Once the movant produces such evidence, the burden shifts to the respondent to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue wor-

---

1. Sec. 58–3 states that, "It shall be unlawful to practice or engage in fortunetelling, palmistry, reading futures and the like." *Ord. No. 293, § 1 (art. 75), 12–21–82.*

thy of trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. *Id.* Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### III.  Analysis

Plaintiffs move for partial summary judgement on the constitutionality of the Ordinance. They contend that the ordinance violates the First Amendment by prohibiting speech based on content and that the ordinance is impermissibly vague and overbroad.[2] The City asserts that summary judgment is not proper because the Ordinance has never been enforced or threatened to be enforced against plaintiffs. The City maintains that because the Ordinance has not been enforced, plaintiffs do not have standing. Alternatively, the City argues that Trimble has not suffered any damages as a result of the Ordinance.[3] Because the issue of standing questions the jurisdiction of this Court, such issue must be addressed first before reaching the merits of plaintiffs' First Amendment claims.

### A.  Justiciability

The City asserts that because the plaintiffs have not been prosecuted nor threatened with prosecution under the Ordinance, they lack standing as there is no "case or controversy". Plaintiffs contend that the Ordinance proscribes activities that they actively practice. Therefore,

plaintiffs argue that the Ordinance has a chilling effect on their free speech rights conferring standing.

"Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies'." *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). In fact, no "principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal court jurisdiction to actual cases or controversies." *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 37, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). "All of the doctrines that cluster about Article III—not only standing but mootness, ripeness, political question, and the like—relate in part, and in different though overlapping ways, to an idea, which is more than an institution but less than a rigorous and explicit theory, about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government." *Vander Jagt v. O'Neill,* 699 F.2d 1166, 1178–1179 (D.C.Cir.1982). Collectively, these doctrines surrounding Article III have been labeled as the requirement that a civil action must be "justiciable".

Justiciability has at least two distinct components. "One is jurisdictional, the Article III requirement that federal courts decide only 'cases' and 'controversies'." *International Society for Krishna Consciousness of Atlanta v. Eaves,* 601 F.2d 809, 817 (5th Cir.1979). The other requirement is prudential, consisting of "policy considerations not specified in the Constitution but bearing on whether it is appropriate to permit a particular case to

---

**2.** In their reply to defendant's opposition, plaintiffs also assert that the Ordinance results in a violation of their First Amendment free exercise rights. Because plaintiffs' claims concerning their free speech rights are dispositive of the present motion, the Court will not render an opinion as to the merits of their free exercise claim.

**3.** The City's opposition does not address any potential damages that the other three plain-

tiffs may have incurred but only points out that a dispute exists as to what was the real reason for Trimble closing the Candle Shoppe. Regardless of the reason for the Candle Shoppe's closing, the issue of damages is of no moment to plaintiffs' instant motion as the motion is confined to the question of the constitutionality of the Ordinance and does not address Trimble's claim for damages. Any dispute of fact as to the cause of Trimble's damages is irrelevant.

be litigated in a federal court at a particular time." *Id.*

■ As part of the justiciability requirement, the question of standing "is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin,* 422 U.S. 490, 498–499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (emphasis in original). The constitutional core of standing contains three elements. The party invoking federal court authority must show that (1) he has personally suffered some actual or threatened injury as a result of the defendant's conduct; (2) the injury can fairly be traced to that conduct; and (3) a favorable decision is likely to redress the injury. *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). These core components of the standing requirement are derived directly from Article III. *Allen,* 468 U.S. at 751, 104 S.Ct. 3315.

■ Related to the standing requirement is the question of ripeness. In the First Amendment context involving a pre-enforcement challenge, the ripeness inquiry focuses on how imminent the threat of prosecution is and whether the plaintiff has sufficiently alleged an intention to refuse to comply with the statute in order to ensure that the fear of prosecution is genuine and the alleged infringement on First Amendment rights is concrete and credible as opposed to being speculative or imaginative. *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). While it is not necessary that a plaintiff expose himself to actual arrest or prosecution to satisfy the ripeness test, the "premise of *Marbury v. Madison* requires us to insist that an anticipatory challenge to [a] statute's constitutionality grow out of a 'real substantial controversy between parties . . . a dispute 'definite and concrete'." *Eaves,* 601 F.2d at 817 (citing *Babbitt v. United Farm*

*Workers Nat'l Union,* 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)).

■ Similarly, "where a vague statute 'abuts upon sensitive areas of First Amendment freedoms,' it 'operates to inhibit the exercise of those freedoms.' Uncertain meanings inevitably lead citizens to 'steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked'." *Grayned v. City of Rockford,* 408 U.S. 104, 109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) (citations omitted). Thus, the chilling effect on First Amendment freedoms by overly broad and vague statutes is justification for a loosening of the strict requirements of standing and ripeness to allow plaintiffs to litigate pre-enforcement actions. *Secretary of State of Maryland v. Joseph H. Munson, Co.,* 467 U.S. 947, 956, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984).

Although the standing and ripeness questions share many of the same basic concepts, standing may be distinguished from ripeness. "[W]here standing is at issue the question regarding the existence of the actual injury arises from the identity of the parties rather than . . . the non-occurrence of events in the causal chain which may or may not occur." *Hallandale Professional Fire Fighters Local 2238 v. City of Hallandale,* 922 F.2d 756, 760, n. 3 (11th Cir.1991). The standing question asks whether the plaintiff "is the proper party to request an adjudication of a particular issue because he has suffered a concrete injury-in-fact." *National Rifle Ass'n of America v. Magaw,* 132 F.3d 272, 280 (6th Cir.1997). In contrast, the question of ripeness inquires as to "whether a particular challenge is brought at the proper time and is ripe for pre-enforcement review." *Id.*

■ The plaintiffs in the case at bar have standing to challenge the Ordinance. First Amendment freedoms are implicated allowing the injury requirements of justiciability to be applied loosely. *Eaves,* 601 F.2d 809 (5th Cir.1979). Plaintiffs have alleged personal injury fairly traceable to

the City's allegedly unlawful conduct. *See Valley Forge*, 454 U.S. at 472, 102 S.Ct. 752. Each of the plaintiffs contend they practiced their skills as psychic readers and healers, actions which are in direct contravention of the Ordinance's prohibitions. Plaintiffs no longer practice their respective skills out of fear of criminal prosecution. Furthermore, a judgment declaring the Ordinance unconstitutional would redress the plaintiffs' injuries as they would be able to fully practice their skills without a fear of prosecution.

■ As the Court perceives the facts before it, the heart of the justiciability question in this case is whether the plaintiffs' First Amendment claims are ripe for review. While the ripeness inquiry focuses on how imminent the threat of prosecution is under the Ordinance, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of a specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). However, the Supreme Court has recognized that where the alleged danger of a challenged statute is self-censorship, a credible threat of prosecution can be realized without an actual threat of prosecution. *Virginia v. American Booksellers Ass'n., Inc.*, 484 U.S. 383, 393, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988). In *American Booksellers Ass'n., Inc.*, the Court found an injury in fact where the statute at issue had been amended to incorporate unconstitutional prohibitions and was challenged prior to becoming effective. Similarly the Tenth Circuit found a credible threat of prosecution existed in a pre-enforcement action in *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1502 (10th Cir.1995), because the State in that case had "not affirmatively disavowed any intention of bringing criminal prosecution" against violators of the challenged statute.

Although the City Prosecutor, Anne Stevens, states in her affidavit that she did not *intend* on prosecuting Trimble under the Ordinance, she did not affirmatively state that she would not prosecute Trimble or the other plaintiffs in the future. *Defendant's Opposition*, Exhibit A, ¶ 6. Stevens only points out that "no one has ever been prosecuted by the City of New Iberia for violation of the subject ordinance during her ten years as City Prosecutor." *Id.* While the Court can only speculate that the reason for Stevens' lack of desire to prosecute anyone under the statute may have been based on the fact that she was unaware of the statute prior to Trimble's inquiries, the fact remains that the statute is still in effect. Given Stevens' fairly recent discovery of the Ordinance, there is no indication that she, or her successors, would unequivocally disavow enforcement of the Ordinance.

The Court finds particularly compelling the fact that the City Council chose not to repeal the Ordinance when given the opportunity at its July 7, 1998 meeting. The City Council's refusal to repeal the Ordinance can be likened to the unconstitutional amendments of the statute at issue in *American Booksellers Ass'n*. The failure to repeal the Ordinance is the equivalent of an affirmation of the Ordinance's prohibitions. This fact alone would indicate that the there is a credible threat of prosecution under the Ordinance. The plaintiffs can only be left with the objective fear that the threat of prosecution remains. Therefore, the plaintiffs' First Amendment claims are ripe for adjudication.

### B. Violation of Plaintiffs' First Amendment Rights

#### 1. Commercial Speech

Finding that the plaintiffs have presented justiciable claims, the merits of plaintiffs' claims must be addressed. Plaintiffs contend that the Ordinance is an unlawful prohibition on their free speech rights protected by the First and Fourteenth Amendments of the Constitution.[4] Plain-

---

4. Because this is a § 1983 action, the violation of plaintiffs' First Amendment rights are redressable via the Due Process Clause protections of the Fourteenth Amendment. *See 44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 489, 116 S.Ct. 1495, 134 L.Ed.2d 711

tiffs maintain that the Ordinance prohibits speech solely on the basis of its content and so is subject to a strict scrutiny standard of review. In opposition, the City asserts that the ordinance prohibits commercial speech only and that a lesser degree of scrutiny should apply.

"When a State regulates commercial messages to protect consumers from misleading, deceptive, or aggressive sales practices, or requires the disclosure of beneficial consumer information, the purpose of its regulation is consistent with the reasons for according constitutional protection to commercial speech and therefore justifies less than strict review." *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 501, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996); *see also Hoover v. Morales,* 164 F.3d 221, 225 (5th Cir.1998) (commercial speech is generally less protected than non-commercial speech). However, before regulations of speech are subjected to less than strict review,[5] the speech intended to be regulated must be classified as commercial speech.

The "defining element of commercial speech is not that the speaker is paid to speak, but rather that the speech concerns the 'economic interests of the speaker and its audience'." *Hoover,* 164 F.3d at 225. "Commercial advertising constitutes paradigmatic commercial speech under the Supreme Court's standard because its fundamental purpose is to propose an economic transaction." *Commodity Trend Service, Inc. v. Commodity Futures Trading Commission,* 149 F.3d 679, 684 (7th Cir.1998). Nonetheless, the fact that a speaker is paid does not make his speech commercial. *Hoover,* 164 F.3d

at 225. "It is well settled that a speaker's rights are not lost merely because compensation is received; a speaker is no less a speaker because he or she is paid to speak." *Id.* Where the speaker's speech does not propose a commercial transaction between itself and its audience, the speech is not commercial. *Posadas de Puerto Rico Assoc. v. Tourism Co. of Puerto Rico,* 478 U.S. 328, 340, 106 S.Ct. 2968, 92 L.Ed.2d 266 (1986).

Here, the challenged speech of the plaintiffs is not commercial speech. Just because someone may pay a fee for the plaintiffs' services, the telling of fortunes and the giving of spiritual advice does not propose a commercial transaction. "There is a distinct difference between the offer to tell a fortune ('I'll tell your fortune for twenty dollars.'), which is commercial speech, and the actual telling of the fortune ('I see in your future ...'), which is not." *Argello v. City of Lincoln,* 143 F.3d 1152, 1153 (8th Cir.1998). The Ordinance at issue does not propose to limit the advertising of fortune telling. The Ordinance expressly forbids the practice of fortune telling, regardless of whether the services are provided for a fee. As the Ordinance does not involve the regulation of commercial speech, it will not be subjected to the less than strict review afforded commercial speech regulations.

*2. Prohibiting Speech Based on Content and Strict Scrutiny*

Plaintiffs assert that because the Ordinance proscribes speech based on its content, the Ordinance is subject to the strict scrutiny standard of review. The Court

(1996) ("Although the text of the First Amendment states that 'Congress shall make no law ... abridging the freedom of speech, or the press,' the Amendment applies to the States under the Due Process Clause of the Fourteenth Amendment.").

5. The "less than strict review" in commercial speech cases involves a four-part analysis. "At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech

to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest." *Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York,* 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).

finds that the Ordinance does indeed prohibit speech based on its content, namely speech that involves fortunetelling, palmistry, reading futures and the like. The Ordinance does not attempt to restrict the time, place or manner[6] in which these types of speech are expressed but simply bans the speech altogether. "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989).

■■■ Because the "First Amendment generally prevents government from proscribing speech or even expressive conduct because of disapproval of the ideas expressed," *R.A.V.*, 505 U.S. at 382, 112 S.Ct. 2538, content-based regulations are presumptively invalid. *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 115, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991) (citations omitted). Only where a content-based regulation survives strict scrutiny review will it be upheld. *Id.* Under strict scrutiny, the government must show that its regulation is reasonably necessary to achieve a compelling interest. *R.A.V.*, 505 U.S. at 395, 112 S.Ct. 2538.

■■■ In its opposition, the City states that "the subject ordinance serves a compelling state interest in 'protecting the consumer'." *Defendant's Opposition*, p. 4. For purposes of plaintiffs' motion, the Court will accept the City's position and assume that consumer protection is a compelling state interest. Therefore, the validity of the Ordinance depends on whether it is reasonably necessary to achieve the

City's compelling interest. Plaintiffs argue that consumer protection against fraud and unfair trade practices is already provided under state law in the Louisiana Unfair Trade Practices Act, La.R.S. 51:1401 *et. seq.* Plaintiffs assert that to the extent fortunetelling and the like may be unfair or deceptive, they are already prohibited by state law.

The Supreme Court has pointed out that the "existence of adequate content-neutral alternatives undercuts significantly" the government's position that its challenged legislation is reasonably necessary to achieve its interests. *R.A.V.*, 505 U.S. at 395, 112 S.Ct. 2538. If the City were concerned about protecting consumers who solicit the services of the plaintiffs, the City could have enacted legislation similar to the Louisiana Unfair Trade Practices Act. Instead of choosing the least restrictive means of protecting consumers of New Iberia from the perceived deception of fortunetelling, the City has cast a broad net. As pointed out by the Supreme Court in *Wooley v. Maynard*, 430 U.S. 705, 716, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977), even though government's purpose may be substantial, "that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." Because the City has failed to meet its burden of proving that the Ordinance is reasonably necessary to achieve a compelling interest, plaintiffs' motion will be granted and the Ordinance will be declared unconstitutional.

### C. Unconstitutionally Vague

■■■ Plaintiffs also challenge the Ordinance as being unconstitutionally vague.[7]

---

**6.** *See Reno v. A.C.L.U.*, 521 U.S. 844, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997) (time, place and manner regulations not subject to strictest scrutiny).

**7.** Although plaintiffs challenged the Ordinance on grounds of overbreadth, the Court will decline to rule on the merits of such claim. Challenges of overbreadth are normally reserved for instances in which the ac-

tual plaintiff lacks standing but seeks to assert the potential claims of third parties not before the court. *See Hallandale Professional Fire Fighters Local 2238 v. City of Hallandale*, 922 F.2d 756, 760 (11th Cir.1991). As discussed *supra*, the plaintiffs in this case have standing and so do not have to rely on the rights of third persons to maintain their lawsuit. A ruling as to plaintiffs' claim regarding the overbreadth of the Ordinance is unnecessary.

Plaintiffs contend that because the Ordinance does not define what conduct is included in the phrase "and the like", it is impossible for anyone to know what is and is not permitted under the Ordinance.

The vagueness doctrine operates to invalidate a law that "may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits." *City of Chicago v. Morales*, 527 U.S. 41, 119 S.Ct. 1849, 1859, 144 L.Ed.2d 67 (June 10, 1999). When a statute is capable of reaching First Amendment freedoms, the doctrine demands a greater degree of specificity than in other contexts. *Smith v. Goguen*, 415 U.S. 566, 573, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974). However, the vagueness doctrine is not an instrument of the First Amendment but instead is a due process concept implementing principles of fair warning and non-discriminatory enforcement. *Morales*, 527 U.S. at ——, 119 S.Ct. at 1857. Laws which contain "[u]ncertain meanings inevitably lead citizens to steer far wider of the unlawful zone ... than if the boundaries of the forbidden area were clearly marked." *Grayned v. City of Rockford*, 408 U.S. 104, 109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

It has already been determined that the Ordinance reaches First Amendment freedoms. Therefore, the Ordinance must be specific as to what conduct is prohibited. The face of the Ordinance provides no guidance as to what conduct it prohibits. The Ordinance leaves only an individual law enforcement officer to decide whether particular conduct qualifies as "and the like". Hence, the Ordinance fails to provide the kind of notice demanded by the Due Process Clause of the Fourteenth Amendment, and as such, is unconstitutionally vague.

### D. Propriety of Injunctive Relief

Although "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), to justify the issuance of injunctive relief, "a district court can generally protect the interests of a federal plaintiff by entering a declaratory judgment, and therefore the stronger injunctive medicine will be unnecessary." *Doran v. Salem Inn*, 422 U.S. 922, 931, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). "To justify ... interference [with state court enforcement] there must be exceptional circumstances and a clear showing that an injunction is necessary in order to afford adequate protection of constitutional rights." *Spielman Motor Sales Co. v. Dodge*, 295 U.S. 89, 95, 55 S.Ct. 678, 79 L.Ed. 1322 (1935). In *Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977), the Supreme Court found an exceptional situation where the plaintiff had been subjected to three prior prosecutions under the challenged statute. The Court noted, however, that the plaintiff's situation was "quite different from a claim for federal equitable relief when a prosecution is threatened for the first time." *Id.* at 713, 97 S.Ct. 1428. The Court reasoned that the threat of repeated prosecutions in the future against the plaintiff and his wife, "and the effect of such a continuing threat on their ability to perform the ordinary tasks of daily life which require an automobile, is sufficient to justify injunctive relief." *Id.*

The plaintiffs' situation in this case is substantially different from that of the plaintiff in *Wooley* in that they have not been repeatedly prosecuted by the City. The circumstances as they now stand are not exceptional to necessitate injunctive relief. The Court will therefore limit plaintiffs' grant of their motion for partial summary judgment to the award of declaratory relief and deny their request for injunctive relief.

### IV. Conclusion

The plaintiffs have presented justiciable claims ripe for adjudication. Sec. 58–3, Code of Ordinances of the City of New Iberia unconstitutionally infringes on their First Amendment right of freedom of expression. Because the City Council of

New Iberia has not repealed the Ordinance, it remains a constant, concrete and credible threat to the plaintiffs' First Amendment freedoms. Additionally, the Ordinance is unconstitutionally vague by failing to provide any guidance as to the meaning of "and the like" regarding prohibited conduct. As such, the Court will grant plaintiffs' motion for partial summary judgment and enter a judgment declaring the Ordinance unconstitutional.