# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 7, 2015

Lyle W. Cayce
Clerk

No. 15-20102

A.T.N. INDUSTRIES, INCORPORATED, a Florida Corporation; JIAFANG
STEEL PIPES AMERICAS, INCORPORATED, a Texas Corporation;
JOSEPH BENOUDIZ, an individual,

>       Plaintiffs - Appellees

v.

MAURICIO GROSS, an individual, also known as Mauricio Gross Drach;
CLARA GROSS, an individual, also known as Clara Schwartz; VOLANSS
SYSTEMS COMPANY, LIMITED, a Hong Kong private company;
BUSINESS MANAGEMENT SERVICES INTERNATIONAL, L.L.C., a Texas
limited liability company,

>       Defendants - Appellants

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CV-2743

Before HIGGINBOTHAM, JONES, and SMITH, Circuit Judges.

PER CURIAM:*

This is a dispute over a preliminary injunction freezing defendants-appellants' access to funds except for $20,000 a month. Defendants-appellants

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-20102

are Mauricio Gross, his wife Clara, and two companies owned by the Grosses or Mr. Gross alone. Plaintiffs-appellees are two corporations in the tool and steel business, ATN Industries (ATN) and Jiafang America (JFA), and Joseph Benoudiz, director of one of those companies and part owner of the other. ATN, JFA, and Benoudiz sued the defendants in September 2014 for civil RICO, conspiracy, fraud, and related claims.[1]

The district court granted the preliminary injunction to secure allegedly illegally transferred funds until trial, which has been scheduled for this December. Defendants argue that on both jurisdictional and substantive grounds the district court abused its discretion in granting the injunction. Persuaded that it did not, we affirm.

**I.**

Plaintiffs' Complaint asserted eleven counts: (i) civil RICO; (ii) civil RICO conspiracy; (iii) fraud by nondisclosure; (iv) fraud; (v) civil conspiracy; (vi) money had and received; (vii) breach of fiduciary duty; (viii) aiding and abetting in breach of fiduciary duty; (ix) constructive trust; (x) resulting trust; and (xi) fraudulent transfer.

The next day, the district court entered a temporary restraining order against the defendants, enjoining the Grosses and their agents from transferring, liquidating, or converting any funds in their actual or constructive possession or control, except for $7,400 per month. After a brief period of limited discovery and an evidentiary hearing, the Court issued findings of fact and conclusions of law, and a preliminary injunction against defendants. Some of the key findings include: (1) Mr. Gross either created, controlled, or both, forty-five separate domestic bank accounts during the

---

[1] Plaintiffs also name several other foreign defendants in the lawsuit who have yet to appear in court.

2

No. 15-20102

course of his employment with ATN, as well as some foreign accounts; and (2) large sums of money emanating from Plaintiffs' accounts were directed by Gross to accounts that were not of the actual pipe manufacturers or suppliers but rather were intermediate accounts with no legitimate business purposes. The court determined that plaintiffs met the standard for preliminary injunctions on both state and federal grounds.

On December 24, 2014, defendants filed a motion for reconsideration, or in the alternative, a modification to the preliminary injunction to limit its scope and exclude Mrs. Gross's funds. Before ruling on that motion, the court issued an Order Releasing Funds that modified the injunction such that the Grosses could access $20,000 a month, but only from specific bank accounts. Then, on January 22, 2015, the district court denied the motion for reconsideration. The defendants filed a notice of appeal on February 18th, challenging the preliminary injunction as modified by the order releasing funds.[2]

## II.

Plaintiff-appellees developed the relationships of the parties and their transactions at the hearing on the preliminary injunction. From 2006 until his resignation in 2014, Mr. Gross worked for ATN. Over the course of his employment, his responsibilities increased, and in 2008, ATN assigned Gross to manage the affairs of Jiafang Americas from ATN's Houston office. Mr.

---

[2] Plaintiffs argue that the defendants did not timely appeal the Order Releasing Funds, which modified the terms of the injunction, and that we therefore lack jurisdiction to review the Order. But neither the Rules nor common sense supports this conclusion. Defendants' notice of appeal was more than thirty days after the Order Releasing Funds, but it was *not* more than thirty days after the order denying the Motion for Reconsideration. Motions for Reconsideration are among motions that toll the running of the thirty-day period for filing a notice of appeal under Rule 4(a)(4)(A). *See Charles L.M. v. Ne. Indep. Sch. Dist.*, 884 F.2d 869, 869 (5th Cir. 1989). The appeal of the Order was timely under Rule 4(a)(4)(A).

The timing requirement here achieves a practical result. We review the Order Releasing Funds as part of this Court's review of the injunction. The district court intended for the Order Releasing Funds to "supplement[]" the preliminary injunction. The Order is effectively part of the injunction itself, which the plaintiffs agree was timely appealed.

No. 15-20102

Gross was authorized to open and manage bank accounts, negotiate and make contracts, and process payments on behalf of Jiafang Americas.

While in charge of JFA, Mr. Gross allegedly (i) engaged in a series of fraudulent transactions, transferring over $29 million from JFA to bank accounts owned or controlled by Mr. Gross or his associates, and (ii) to conceal these transactions, registered shell companies he owned as "doing business as" ("d/b/a/") names that closely resembled legitimate steel suppliers in China. Mr. Benoudiz says he did not detect the fraudulent transactions until 2014, when an unrelated restructuring of ATN resulted in Mr. Gross's loss of responsibility over JFA's accounts. When questioned about suspicious emails, Mr. Gross resigned. He then traveled to Hong Kong and withdrew over $1 million dollars from accounts he controlled there, some of which he transferred to his father-in-law, Mr. Schwartz, in Venezuela.

### III.

Defendants argue that the plaintiffs lack standing to bring this suit. "As a jurisdictional matter, standing is a question of law that [this Court] review[s] *de novo*," but "[f]acts expressly or impliedly found by the district court in the course of determining jurisdiction are reviewed for clear error."[3] "[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement."[4]

To challenge ATN's standing, defendants focus on the fact that only JFA, and not ATN, was a party to many of the transactions in question in this case. The district court determined that ATN itself was also a party to several problematic transactions, including ten payments to Gulf Maritime in 2008 and 2009, totaling $6.5 million. While the Texas and federal 4-year statute of

---

[3] *Cole v. Gen. Motors Corp.*, 484 F.2d 717, 721 (5th Cir. 2007).

[4] *Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.* 547 U.S. 47, 52 n.2 (2006); *see also Roark v. Hardee LP v. City of Austin*, 522 F.3d 533, 544 n.11 (5th Cir. 2008).

No. 15-20102

limitations could ultimately prove to bar claims rooted in these transactions, the plaintiffs contend the action did not accrue until 2014 when they "knew" or should have known about the fraud "in the exercise of reasonable diligence."[5] Defendants have not argued that the plaintiffs failed to exercise due diligence in discovering the fraud earlier. ATN is an injured party with standing at this stage of the proceedings.

Next, defendants also suggest that JFA has not suffered a financial injury. There is no merit to this argument. The district court reviewed hundreds of pages of evidence that JFA unknowingly paid millions of dollars supposedly to vendors but in fact to Mr. Gross and his associates, and it did not clearly err in concluding that JFA had suffered a loss as the result of the alleged scheme. JFA has standing.

Mr. Benoudiz's standing presents a closer question. The district court determined that Mr. Benoudiz became a 50% shareholder in JFA in 2008, a factual finding that we review for clear error.[6] Defendants point to parts of the record suggesting that he wasn't a shareholder until 2013, and cannot assert claims on behalf of JFA for transactions before that date. Other documents in the record suggest that he became a shareholder in 2008. The district court did not clearly err in crediting one party's evidence over another's[7] in concluding that Mr. Benoudiz was a shareholder in 2008.

The record also indicates that Mr. Benoudiz transferred his own money to Gulf Maritime after Mr. Gross represented that payment was due and JFA lacked the funds in its account, representations found to be false. As a result,

---

[5] See *Murphy v. Campbell*, 964 S.W.3d 265, 270 (Tex. 1997).

[6] *Hoover v. Morales*, 164 F.3d 221, 224 (5th Cir. 1998) (holding that this Court reviews factual determinations for clear error.)

[7] *See Anderson v. City of Bessemer City*, 470 U.S. 564 (1985).

## No. 15-20102

at this stage in the proceeding Mr. Benoudiz has standing in his personal capacity.

### IV.

Turning to the appropriateness of the grant of preliminary injunction, we find no abuse of discretion.[8] A preliminary injunction may be granted if the plaintiff establishes the following rote elements:

> (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest.[9]

First, the court concluded that plaintiffs had shown a substantial likelihood of success on the merits. Addressing the three principal claims— RICO, fraud, and breach of fiduciary duty—the court determined that the plaintiffs had made a prima facie showing of success on the merits. The court examined in detail three representative transactions, tracing funds from JFA that were intended for legitimate vendors but ended up in accounts owned wholly by the defendants. In each case, JFA netted less money than it should have, with the profit going to Gross or his associates. Gross provided nine charts purporting to explain the fund transfers, but the charts do not provide any information that counters their suggested impropriety. The record thus supports the district court's determination that plaintiffs satisfied the first *Hoover* element.

Next, the district court found that plaintiffs faced a substantial threat of irreparable injury in the absence of injunctive relief. Mr. Gross had already closed personal and corporate accounts in Hong Kong, containing exclusively

---

[8] *See Bluefield Water Ass'n, Inc. v. City of Starkville*, 577 F.3d 250, 253 (5th Cir. 2009).
[9] *Hoover v. Morales*, 164 F.3d 221, 224 (5th Cir. 1998).

6

money diverted from JFA, transferring some of the funds to his father-in-law. Mr. Gross also has international ties, including the co-defendants – natural persons and shell companies alike – who have yet to appear in court. He has experience and sophistication transferring money internationally, suggesting a high risk that funds allegedly belonging to plaintiffs could disappear. The district court did not, therefore, err in concluding that plaintiffs had satisfied the second *Hoover* element.

Third, the court determined that the threatened injury to plaintiffs outweighed the possible damages the Grosses would face because of the injunction. The district court determined that Mr. Gross had an income of less than $90,000/year in total from ATN, but the modified injunction allowed him to withdraw $20,000/month from his various bank accounts, or a total of $240,000/year. Defendants have not demonstrated how access to funds exceeding two-and-a-half times their regular income will injure them. Given the risk of large financial loss to the plaintiffs absent an injunction, the district court did not abuse its discretion in determining that the potential damage to the Grosses did not outweigh this risk.

Lastly, the district court found that the injunction was not against the public interest. Defendants argue that the injunction is unduly harsh, because it garnishes the Grosses' wages, fails to provide for a bond, and extends to "innocent property." But the injunction does not garnish the Grosses' wages. Rather, it limits access to funds to $20,000 a month during the injunction period. Nor did the district court abuse its discretion in refusing to require a bond. Rule 65(c) does require that a court "issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any

party found to have been wrongfully enjoined or restrained."[10]  But under Rule 65(c), a court "may elect to require no security at all."[11] The Rule itself allows the court to provide the amount that it "considers proper."[12]

Moreover, the district court had broad discretion over the funds to be included in its preliminary injunction.[13] Even assuming that the Grosses' "innocent money" could be separated from the funds obtained fraudulently, itself a difficult task given that the assets are fungible, the district court did not abuse its discretion in extending the scope of the injunction to the accounts that it did. Rule 64(a) of the Federal Rules of Civil Procedure allows courts to seize property to the extent allowed by the laws of the state where the court in located. Texas law allows for "an attachment or other provisional remedy against the asset transferred *or other property* of the transferee" and "any other relief as circumstances may require."[14]

Finally, the district court did not abuse its discretion by including Mrs. Gross in the preliminary injunction. While defendants argue that Mrs. Gross had no involvement in her husband's business affairs, the record indicates that she was a 50% owner and co-manager of BMSI, and was a signatory on multiple bank accounts that received allegedly misdirected payments from JFA. Plaintiffs also allege that Mrs. Gross is a coconspirator. Under Texas law, coconspirators are jointly and severally liable for all acts done in furtherance of the conspiracy.[15] Rule 65 also allows for injunctions to bind "other persons who are in active concert or participation with" the parties.[16] Finally, as a

---

[10] Fed. R. Civ. P. 65(c).

[11] *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996).

[12] Fed. R. Civ. P. 65(c).

[13] *See Kaepa,* 76 F.3d at 628; Fed. R. Civ. P. 65(c); Tex. Bus. & Com. Code § 24.008(a).

[14] § 24.008(a) (emphasis added).

[15] *Tompkins v. Cyr*, 202 F.3d 770, 783 (5th Cir. 2000).

[16] Fed. R. Civ. P. 65(d)(2)(C).

No. 15-20102

practical matter, allowing Mrs. Gross unlimited access to accounts jointly controlled by her husband and her could undermine the purpose of the injunction. Her father, Mr. Schwartz, already is "holding" over $100,000 of funds withdrawn by Mr. Gross immediately after his resignation.

We AFFIRM.