**KELLEY BLUE BOOK CO., INC., d/b/a KBB.com**

v.

**LOUISIANA MOTOR VEHICLE COMMISSION**

**NO. 16–CA–281**

Court of Appeal of Louisiana, Fifth Circuit.

December 07, 2016

COUNSEL FOR PLAINTIFF/APPEL-LANT, KELLEY BLUE BOOK CO., INC., D/B/A KBB.COM, William P. Connick, Kristine M. Brown, David B. Carpenter

COUNSEL FOR DEFENDANT/AP-PELLEE, LOUISIANA MOTOR VEHI-CLE COMMISSION, Adrian F. LaPeyronnie, III, Gregory F. Reggie

Panel composed of Marc E. Johnson, Robert M. Murphy, and Hans J. Liljeberg

LILJEBERG, J.

Plaintiff, Kelley Blue Book Co., Inc. ("KBB"), appeals the district court's judgment affirming the decision of the Louisiana Motor Vehicle Commission (the "Commission"), which assessed a $5,000.00 fine and costs in the amount of $2,819.96 against KBB. The Commission assessed the fine and costs based on its finding that KBB engaged in internet advertising in violation of Section 723.A of Title 46, Part V of the Louisiana Administrative Code, by using the term "invoice" in an advertisement. For the following reasons, we affirm the district court's judgment.

## FACTUAL AND PROCEDURAL HISTORY

KBB is a digital media company which offers a wide range of motor vehicle related information to its constituents, including consumers, government entities, manufacturers, dealers, insurance companies and financial institutions. The issue before this Court relates to the portion of KBB's internet website, which on August 5, 2013, invited the consumer to conduct a search to obtain a fair purchase price for his or her vehicle of choice. According to KBB, the fair purchase price provides consumers with a target price based on what other consumers in the same market paid for a specific make and model of vehicle. KBB contends that in addition to providing the fair purchase price, its website provides a range of prices which includes the manufacturer's suggested retail price ("MSRP") and the dealer invoice price. After obtaining this pricing range, the consumer can obtain a free quote from dealers that advertise with KBB by providing their contact information.

On August 5, 2013, the Commission conducted a search on KBB's website to obtain a fair purchase price for a 2014 Ford Fusion Titanium. However, KBB's website provided the Commission with only the dealer invoice price and MSRP. Next to the fair purchase price, it read "N/A."[1]

1. According to KBB, it does not provide a consumer with a fair purchase price unless

After conducting its investigation of KBB's website on August 5, 2013, the Commission issued a Notice of Hearing to KBB stating as follows:

> An investigation by the Commission revealed that Kelly (sic) Blue Book, Co., Inc. d/b/a www.kbb.com, on and/or around August 5, 2013, conducted or designed advertising for the sale or offer to sell new motor vehicles to Louisiana consumers on its kbb.com website, i.e., advertising a 2014 Ford Fusion Titanium Sedan utilizing a dealer invoice price of $33,342.00 (Chapter 7. § 703A., § 705A. & § 723A.)

In this notice, the Commission alleged that KBB "violated the following sections of the Louisiana Motor Vehicle Commission Law and its Rules and Regulations:"

### Louisiana Revised Statutes

LSA–R.S. 32:1254(N). Any person who sells or offers to sell new motor vehicles, recreational products, or specialty vehicles, or leases, rents, or offers to lease or rent new motor vehicles, recreational products, or specialty vehicles, or conducts and designs advertising or participates in special sales events on behalf of licensees, and which is not a licensee of the commission shall, nonetheless, be subject to the provisions of Chapter 6 of Title 32 and the rules and regulations of the commission.

### Louisiana Administrative Code Title 46. Part V. Subpart 1. Chapter 7. Advertising

#### § 703. General Prohibition

A. A person advertising vehicles shall not use false, deceptive, unfair, or misleading advertising.

#### § 705. Specific Rules

A. The violation of an advertising rule shall be considered by the commission as a prima facie violation of R.S. 32:1251 et seq. In addition to a violation of a specific advertising rule, any other advertising or advertising practices found by the commission to be false, deceptive, or misleading shall be deemed a violation of R.S. 32:1251 et seq., and shall also be considered a violation of the general prohibition.

#### § 723. Advertising at Cost or Invoice

A. No advertisement shall be run which uses the term or terms "invoice"; "cost"; "percent over/under cost, invoice or profit"; "$ $ $ over/under cost, invoice or profit".

The Commission held an administrative hearing on May 19, 2014. At the beginning of the hearing, the Commission's counsel explained its position that KBB violated the advertising rules and regulations by providing the consumer with a dealer invoice price accompanied by a link inviting the consumer to request free quotes from dealers that advertise with KBB. The Commission alleged that providing the dealer invoice price in combination with the referral to the dealers constituted an advertisement.

The Commission's Executive Director, Lessie House, testified at the hearing and explained the Commission conducted the search after learning traditional consumer research sites, such as KBB, were no longer simply providing consumer research information, but also referring consumers to dealers advertising on their websites. Ms. House testified regarding the specifics of the search conducted on KBB's website on August 5, 2013. She explained that the KBB website contained language stating,

KBB has a statistically significant amount of sales data which allows it to provide the consumer with accurate information.

"Trust KBB for new car pricing. Our fair purchase price is updated weekly so you can get your best deal. Select a car." The website then contained prompts to type in a zip code and select a make and model of a vehicle. The Commission chose to search for a fair purchase price for a 2014 Ford Fusion Titanium. The website then contained prompts to select options and packages including color, steering, safety and security, seats, roofing glass, wheels and tires.

After completing these selections, the website prompted the Commission to click a button to see the fair purchase price. However, after clicking the button, the website stated "N/A" next to the fair purchase price, and only provided an MSRP in the amount of $36,235.00 and a dealer invoice price in the amount of $33,342.00. Ms. House testified that immediately under the dealer invoice price, the page contained a button which stated, "Find dealers near you. Get your free quote." The Commission clicked on the free quote button and received a list of five motor vehicle dealers from which it could choose to obtain a quote by providing contact information.

Scott Ehlers, KBB's Vice President, also testified at the hearing and agreed that when a consumer clicks on the button to receive a free quote, the list only includes those motor vehicle dealers which advertise with KBB. KBB sends an email with the consumer's contact information to the dealers selected by the consumer. Mr. Ehlers also testified that KBB provides dealer invoice price information to educate the consumer because this is a data point dealers use when negotiating a sale with a consumer in the showroom. He agreed the dealer invoice price provided to the consumer is not the actual price the dealer pays to the manufacturer because the invoice price does not reflect any hold backs, incentives or rebates the manufacturer provides to its dealers.

Mr. Ehlers also explained that KBB normally provides all three data points, the fair purchase price, dealer invoice price and MSRP, to assist the consumer in negotiating a vehicle purchase. However, he agreed when the Commission conducted the August 5, 2013 search, KBB's website did not provide a fair purchase price because new vehicles were just arriving in the dealerships and KBB did not have a statistically significant number of transactions to provide a valid fair purchase price. He also agreed the dealers pay KBB for the referrals created by the free quote link as part of the dealers' advertising packages, but KBB does not obtain a commission if a dealer sells a vehicle as a result of a referral. In addition, KBB is not directly involved in the negotiation process after providing the referral.

At the conclusion of the hearing, the Commission unanimously voted to find KBB engaged in internet invoice advertising on August 5, 2013, in violation of Section 723.A. The Commission imposed a fine of $5,000.00, plus the costs of the proceeding. On June 26, 2014, the Commission entered a written judgment containing its decision and setting the costs at $2,819.96, and mailed notice of the judgment to KBB's counsel on June 30, 2014. On July 30, 2014, KBB filed an appeal in the 24th Judicial District Court for the State of Louisiana in accordance with La. R.S. 49:464. The district court affirmed the Commission's judgment on January 19, 2016. KBB filed a motion for devolutive appeal on March 15, 2016, and the district court entered an order of appeal on that same day. This appeal follows.

**DISCUSSION**

We review a district court's appellate review of a state agency decision in accordance with La. R.S. 49:964. *Brewton v.*

*State Dep't of Health and Hosps.*, 06–804 (La. App. 5 Cir. 3/13/07), 956 So.2d 15, 17. La. R.S. 49:964(G) provides that the reviewing court may affirm the agency's decision, remand the case for further proceedings, or reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decision are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.

■ No deference is owed by the court of appeal to factual findings or legal conclusions of the district court reviewing the agency decision. *Giles Automotive, Inc. v. Louisiana Motor Vehicle Com'n*, 03–0299 (La. App. 5 Cir. 7/29/03), 852 So.2d 1091, 1092–93.

KBB raises several assignments of error on appeal. In its first assignment of error, it argues the district court erred in affirming the Commission's decision due to protections the First Amendment of the United States Constitution affords it. KBB also contends in its second assignment of error that the district court erred by finding the language at issue constituted an advertisement under Section 723.A. We address this issue first because if the disputed language is not an advertisement, the Commission's decision was not warranted.

■ As explained above, Section 723.A provides that no advertisement shall contain the term "invoice." Section 101.A of Title 46, Part V of the Louisiana Administrative Code defines an advertisement as:

an oral, written, telecommunicated, graphic or pictorial statement made in the course of soliciting business, including, without limitation, a statement or representation made ... on radio, the Internet, or via on-line computer service, or on television or on-hold messaging, any medium.

The district court determined the language at issue was an advertisement under this provision because KBB posted the dealer invoice price next to the "Get your free quote button," which offered to connect the consumer to KBB's dealers/advertisers. The district court determined the "Get your free quote" button functioned exclusively to solicit business for the dealers paying for referrals as part of their advertising package with KBB.

In its appellate brief, KBB argues its use of the dealer invoice price is editorial content and does not constitute an advertisement because it is not soliciting business. KBB argues that it does not sell vehicles and does not earn a commission when a dealer sells a car to a consumer using KBB's website. It further contends that when it provides a consumer with pricing information, it does not confirm that the vehicle selected by the consumer is available for sale.

We agree the evidence presented regarding the August 5, 2013 KBB website search establishes that KBB used the term "dealer invoice price" in the course of soliciting business. KBB invited the consumer to obtain a fair purchase price, but then only provided the MSRP and dealer invoice price. Immediately next to the dealer invoice price, KBB invited the consumer to obtain quotes from its advertisers. Mr. Ehlers testified that the advertisers pay for the referral generated by the free quote. Thus, the information KBB provided to the consumer in the course of the referral process became statements made in the course of soliciting business for KBB's advertisers.

Section 101.A defines an advertisement as a "statement made in the course of soliciting business." It does not require the person or entity making the statement to be the person or entity actually selling the motor vehicle. La. R.S. 32:1254(N) provides that anyone who "conducts and designs advertising" is subject to the Commission's advertising rules and regulations. The purpose of these advertising regulations is to prohibit deceptive or misleading advertising.[2] KBB promised a fair purchase price, but then provided the dealer invoice price without any explanation or education to the consumer that this price did not reflect the actual cost the dealer paid to the manufacturer.[3]

After reviewing the law, regulations, and entirety of the record *de novo*, we find KBB's use of the term "dealer invoice

price" in the search conducted as part of the Commission's August 5, 2013 investigation was an advertisement because it was a statement made in the course of soliciting business on behalf of KBB's dealers/advertisers. This assignment of error is without merit.

We next address KBB's argument that the district court erred in failing to reverse the Commission's decision because the language at issue is protected by the First Amendment of the United States Constitution.

■■■ The degree of protection afforded by the First Amendment depends on whether the regulated language constitutes commercial or non-commercial speech. *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 65, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983). Speech on matters of public concern is at the heart of the First Amendment's protection. *Dun & Bradstreet v. Greenmoss Builders, Inc.*, 472 U.S. 749, 756–57, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985).

■■■ Commercial speech did not enjoy First Amendment protection until 1976, when the U.S. Supreme Court decided *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 770, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). However, commercial speech does not mandate heightened constitutional protection and is therefore, afforded less First Amendment protection than other constitutionally guaranteed speech. *Cent. Hud-*

---

2. In *Joe Conte Toyota v. Louisiana Motor Vehicle Commission*, 24 F.3d 754, 757–58 (5th Cir. 1994), the U. S. Fifth Circuit determined that the use of the term "invoice" in a motor vehicle advertisement was "likely to deceive" and "therefore inherently misleading," because the cost advertised is not the actual cost incurred by the dealer due to holdbacks, incentives and rebates the dealers receive from manufacturers.

3. Mr. Ehlers testified during the administrative hearing that after the Commission conducted its search in August 2013, KBB added information to its website to educate consumers that dealer invoice prices do not necessarily represent a dealer's true cost for the vehicle.

*son Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561–62, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). Commercial speech receives a limited form of protection if it concerns a lawful activity and is not misleading or fraudulent. *Posadas de Puerto Rico Assocs. v. Tourism Co.*, 478 U.S. 328, 340, 106 S.Ct. 2968, 92 L.Ed.2d 266 (1986). It is well-settled that government may regulate commercial speech to ensure that it is not false, deceptive or misleading. *Virginia Pharmacy Bd.*, 425 U.S. at 771–72, 96 S.Ct. 1817. If the commercial speech is not misleading or fraudulent, it may be restricted only if the government's interest in doing so is substantial, the restrictions directly advance the government's asserted interest, and the restrictions are no more extensive than necessary to serve that interest. *Posadas*, 478 U.S. at 340, 106 S.Ct. 2968.

■ The Commission contends KBB's use of the term "dealer invoice price" in connection with its free quote button constituted commercial speech because KBB created leads or referrals for dealers advertising on its site. On the other hand, KBB claims the district court's finding amounts to a legal error because commercial speech must propose a transaction between the speaker and the consumer. KBB argues it did not provide the dealer invoice pricing to propose a commercial transaction between itself and the consumer. KBB notes that it does not sell vehicles, did not confirm with dealers that the version of the 2014 Ford Fusion configured by the consumer actually existed, and had no ability to sell the vehicle at the invoice price provided. KBB contends it provided the invoice pricing information to educate the consumer and allow the consumer to use this information to compare KBB's pricing and valuation data with the prices quoted by third-party dealerships during their purchase negotiations. KBB argues that it

is not involved in these negotiations and receives no compensation for the sale. KBB contends a complete consideration of the circumstances surrounding its use of the term "invoice" in this matter requires a conclusion that it is not commercial speech.

This Court's first task is to determine whether KBB's use of the term "dealer invoice price" under the particular circumstances at issue during the Commission's August 5, 2014 investigation falls within the definition of commercial speech. The district court determined KBB engaged in commercial speech because KBB proposed an economic transaction between its dealers and the consumer. For the following reasons, we agree.

In *Va. State Bd. of Pharmacy*, 425 U.S. at 762, 96 S.Ct. 1817, the U.S. Supreme Court first defined commercial speech as "speech which does no more than propose a commercial transaction." *See also* United States v. United Foods, Inc., 533 U.S. 405, 409, 121 S.Ct. 2334, 150 L.Ed.2d 438 (2001). In *Cent. Hudson, supra,* the Supreme Court indicated commercial speech may be more broadly defined "as an expression related solely to the economic interests of the speaker and its audience." 447 U.S. at 561, 100 S.Ct. 2343.

■ Commercial speech generally appears in the form of a commercial advertisement for the sale of goods or services. *See Bolger*, 463 U.S. at 66–67, 103 S.Ct. 2875. The Supreme Court has cited three factors to consider when deciding whether speech is commercial: 1) is the speech an advertisement; 2) does the speech refer to a specific product or service; and 3) does the speaker have an economic motivation for the speech. *Id.* An affirmative answer to all three questions provides strong support for the conclusion that speech is commercial. *Id.* at 67, 103 S.Ct. 2875.

KBB argues commercial speech must be narrowly defined as a commercial transaction proposed directly between the speaker and the consumer. To support its argument, KBB cites to *Adams v. City of Alexandria*, 878 F.Supp.2d 685, 689 (W.D. La.2012), wherein the court stated, " 'where the speaker's speech does not propose a commercial transaction between itself and its audience, the speech is not commercial.' " The *Adams* court attributes this as a direct quote to the U.S. Supreme Court's decision in *Posadas, supra*, but the Supreme Court did not make this statement in its opinion.[4] Rather, the *Posadas* court quotes the definition of commercial speech set forth in *Virginia Pharmacy*, as speech that does "no more than propose a commercial transaction." 478 U.S. at 340, 106 S.Ct. 2968. The *Posadas* court did not limit the definition of commercial speech, as KBB suggests, to a proposed commercial transaction directly between the speaker and audience.

We recognize this matter presents a unique situation, but the legal precedent does not limit the definition of commercial speech to a proposed transaction |₁₁directly between the speaker and audience. The definition of commercial speech does not exclude situations, such as in the instant case, where the speaker makes a statement on behalf of another which proposes a commercial transaction with the audience.

KBB's use of the term "dealer invoice price," under the particular circumstances at issue, did not merely provide the consumer with educational information. KBB promised a fair purchase price, but instead provided a dealer invoice price and MSRP. By placing the free quote button immedi-

ately under the dealer invoice price, KBB inserted itself into the process in order to create leads or referrals for its advertisers, thereby proposing a commercial transaction with these dealers. The referrals are a component of the advertising package purchased by the dealers from KBB. The portion of KBB's website at issue allowed dealers to benefit from the use of the term "dealer invoice price," when they could not use this term in their own direct advertisement. In addition, as stated and discussed more fully below, courts have concluded that use of the term "invoice" in automobile sales advertisements is misleading.

The only other decision KBB cites in support of its argument that the speech must propose a transaction directly between the speaker and the customer is *Commodity Trend Serv. Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679 (7th Cir. 1998). This case is distinguishable from the instant matter because *Commodity Trend* involved a publisher that distributed impersonal investment information regarding commodity values. Therefore, the *Commodity Trend* speaker proposed no commercial transaction whatsoever. In the August 5, 2013 search at issue, KBB did not merely provide impersonal purchasing advice. KBB asked the consumer to trust its fair purchase pricing. It gathered detailed information from the consumer with the promise of providing a fair purchase price to help the consumer obtain the best deal. KBB then only provided the consumer |₁₂with a dealer invoice price and MSRP, and directed the consumer to its paid advertisers.

We also agree with the district court's finding that the speech at issue combines advertisement, product reference and eco-

---

**4.** It appears the *Adams* court obtained the language it quoted from *Trimble v. City of New Iberia*, 73 F.Supp.2d 659, 666 (W.D. La. 1999). The *Trimble* court cites to *Posadas*, *supra*, in support of the statement, but does not attribute the statement as a direct quote from *Posadas*.

nomic motivation as set forth in *Bolger, supra.* We previously determined that KBB used the term "dealer invoice price" in the context of an advertisement as defined in Section 101.A of Title 46, Part V of the Louisiana Administrative Code. The proposed transaction involved a specific product, a 2014 Ford Fusion Titanium, and KBB had economic motivation to create leads for its paying advertisers. Mr. Ehlers testified that advertisements are necessary in order to allow KBB to offer free information to its constituents on its website. Clearly, KBB included the free quote button to encourage the sale of motor vehicles between its consumers and advertisers.

Based on the foregoing, we find that the language at issue in this matter constitutes commercial speech because KBB delivered the dealer invoice price for a 2014 Ford Fusion instead of the promised fair purchase price. KBB then proposed a commercial transaction between the consumer and KBB's advertisers. Furthermore, this advertising format creates an economic motivation for KBB to refer consumers to its advertisers. Therefore, after a *de novo* review of the entire record, we find the district court did not err in categorizing KBB's speech at issue as commercial speech. We further emphasize that this finding is limited to the specific factual scenario presented by the Commission's August 5, 2013 search conducted on KBB's website.[5]

We next consider whether KBB's commercial speech is entitled to First Amendment protection. In *Central Hudson, supra,* the U.S. Supreme Court held that regulations on commercial speech are permissible as long as they satisfy the following four-part analysis:

At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

447 U.S. at 566, 100 S.Ct. 2343; *Joe Conte Toyota,* 24 F.3d at 755.

Therefore, the threshold question is whether the speech restricted by the statute is "false, deceptive, or misleading." *Bates v. State Bar of Ariz.,* 433 U.S. 350, 383, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); *Gregory v. Louisiana Bd. of Chiropractic Examiners,* 608 So.2d 987, 989 (La. 1992). If so, it is not entitled to First Amendment protection. *Bates,* 433 U.S. at 383, 97 S.Ct. 2691. Advertisers are not permitted to immunize false or misleading information from government regulation by including references to public issues. *Bolger,* 463 U.S. at 67, 103 S.Ct. 2875.

---

**5.** KBB also argues the trial court erred in its analysis of the First Amendment issues because the commercial speech at issue is inextricably intertwined with otherwise fully protected speech, and therefore, merits full constitutional protection. In support of this argument, KBB cites to *Dex Media W., Inc. v. City of Seattle,* 696 F.3d 952 (9th Cir. 2012), which involved a statute regulating yellow pages books in their entirety, not simply the individual advertisements contained

within the book. This case is inapposite. The Commission did not enter an order preventing KBB from using the term "invoice" anywhere on its website. The Commission's findings and our decision is limited to the specific violation discovered during the Commission's August 5, 2013 investigatory search. The commercial speech at issue in that search was not inextricably intertwined with noncommercial speech.

■ The U.S. Supreme Court distinguishes between two types of misleading speech: that which is "inherently likely to deceive," and that which is only "potentially misleading." *Pub. Citizen, Inc. v. La. Attorney Disciplinary Bd.*, 632 F.3d 212, 218 (5th Cir. 2011) (*citing In re R.M.J.*, 455 U.S. 191, 202–03, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982)). In order for speech to fall outside of the First Amendment's protection, the speech must either be inherently likely to deceive, or the record must indicate a particular form or method of advertising has in fact been deceptive. *R.M.J.*, 455 U.S. at 202, 102 S.Ct. 929.

■ Under the *Central Hudson* test, commercial speech that is not inherently misleading may nevertheless be regulated as long as the regulation directly advances a substantial state interest, and is no more extensive than necessary to serve that interest. *Cent. Hudson*, 447 U.S. at 563, 100 S.Ct. 2343; *Pub. Citizen*, 632 F.3d at 218. The chosen regulation does not need to be the least restrictive method for achieving the government's goal. *Bd. of Trs. v. Fox*, 492 U.S. 469, 480, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989).

The court below noted the U.S. Fifth Circuit in *Joe Conte Toyota, supra,* found that the use of the term "invoice" in a motor vehicle advertisement was inherently misleading and deceptive, and not subject to First Amendment protection. 24 F.3d at 756–57; *see also Barry v. Arrow Pontiac, Inc.*, 100 N.J. 57, 71–72, 494 A.2d 804 (N.J. 1985) (finding use of the term "invoice" to be misleading and upholding constitutionality of regulation prohibiting use of term in automobile advertising); *Adams Ford Belton, Inc. v. Missouri Motor Vehicle Commission*, 946 S.W.2d 199, 204 (Mo. 1997). The Fifth Circuit in *Joe Conte Toyota* noted the following finding reached by the district court in that matter:

'Due to holdbacks, incentives, and rebates, the invoice amount bears little relation to the dealer's true cost. To the extent that the term 'invoice' provides any information to the consumer, it is misleading; its use can only be intended to confuse the invoice amount with the dealer's actual costs. Plaintiff in effect concedes this when it offers to explain in its proposed ads that the term 'invoice' does not mean what it appears to mean.'
24 F.3d at 757.

■ KBB argues its use of the term invoice was not misleading because it provided the dealer invoice price as part of a range of pricing to educate the consumer and protect the consumer from being misled by the dealer. However, KBB fails to acknowledge that in the specific scenario at issue, KBB failed to arm the consumer with a fair purchase price or a range of pricing as promised. In addition, KBB's used the term "invoice" in conjunction with its efforts to create leads and referrals on behalf of its advertisers who are prohibited from using the term "invoice" in their advertisements. KBB's use of the term "dealer invoice price" in the scenario at issue allowed KBB's advertisers to make an end-run around the prohibitions established by Section 723.A.

KBB also argues the Commission's finding that KBB violated Section 723.A did not serve a substantial government interest and was more extensive than necessary to serve the Commission's interest. KBB explains that it is in the public's interest to be well-informed when engaging in private economic decisions and transactions. It further contends that the Commission improperly determined that KBB violated this provision simply by using the term "invoice."

As explained above, the Commission has a compelling interest in regulating automo-

bile advertisements that are misleading. The district court correctly determined that by creating referrals for its advertisers, KBB inserted itself into the advertising process, and was no longer acting merely in an informational capacity. Furthermore, the Commission's judgment did not render a blanket determination that any use of the term "invoice" by KBB constituted a violation of Section 723.A. The June 26, 2014 Judgment clearly states that it is limited to the "Internet invoice advertising" that occurred "on or around August 5, 2013."

Based on the foregoing, we do not find that the trial court erred in finding KBB's commercial speech at issue was not entitled to First Amendment protection.

In its third and fourth assignments of error, KBB argues respectively, that the Commission's judgment was not supported and sustainable by a preponderance of the evidence and was arbitrary and capricious. Specifically, KBB contends the evidence indicates that it only used the term "invoice" as part of its editorial content and does not support a finding that KBB used the term "invoice" in an advertisement. It contends the presence of a button which allows its consumers to obtain a free quote does not convert its editorial content into an advertisement. For the reasons stated more fully above, we find the Commission proved by a preponderance of the evidence that on August 5, 2013, KBB used the term "invoice" in an advertisement for its dealers who purchased advertising packages which included KBB's referral service. We further find the Commission's decision was not arbitrary or capricious,

but rather supported by the evidence and applicable law.[6]

In its final assignment of error, KBB argues the district court erred by affirming the Commission's judgment because it was the result of an unlawful procedure. KBB contends the Commission was biased against it and did not afford KBB a full and fair opportunity to present its evidence. KBB also contends the Commissioners interfered with its examination of Ms. House during the hearing.

The alleged bias is based on KBB's claim that a conflict of interest existed because certain Commission members own car dealerships. KBB contends these members were influenced by the conflict of interest out of concern that KBB's use of the term "invoice" could subject the dealers to fines. KBB also complains that some of the commissioners stated that Section 723.A applied to KBB prior to the end of the proceeding.

La. R.S. 49:960(B) provides that "...[a]ny party may request the disqualification of a subordinate deciding officer or agency member, on the ground of his inability to give a fair and impartial hearing, by filing an affidavit, *promptly upon discovery of the alleged disqualification....*" [Emphasis added.] KBB did not raise its concerns regarding the Commission members' alleged bias during the hearing or prior to the time the Commission entered a written judgment (one month after the hearing). KBB failed to promptly raise the alleged bias of the Commission.

Furthermore, a strong presumption of honesty and integrity exists in those serving as adjudicators. *Butler v.*

---

**6.** KBB also argues the Commission started its investigation of KBB based on a consent agreement the Commission entered into with a third party. It notes that prior to this demand the Commission's meeting minutes indicated the Commission's long-standing position that Section 723.A did not apply to

informational websites such as KBB. Ms. House explained, however, that the Commission began its investigation after learning that KBB and other similar sites were engaging in conduct that went beyond merely providing educational information to its website consumers.

*Department of Public Safety and Corrections,* 609 So.2d 790, 793 (La. 1992). A party claiming bias must present convincing evidence that the combination of functions in the same individual poses such a risk of actual and substantial bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be preserved. *Hall v. State Department of Pub. Safety & Corrections,* 98–0726 (La. App. 1 Cir. 4/1/99), 729 So.2d 772, 778.

After reviewing the record from the administrative hearing, we find the Commissioners' comments do not constitute convincing evidence of actual or substantial bias or prejudgment. We further find that KBB had a full and fair opportunity to present its evidence. The witnesses answered all of the questions posed by KBB's counsel and the Commissioners were not prohibited from presenting their own questions to the witnesses. This assignment of error is also without merit.

## DECREE

Based on the foregoing, we affirm the district court's judgment which affirmed the Louisiana Motor Vehicle Commission's decision entered against Kelley Blue Book Co., Inc.

**AFFIRMED**