THOMAS B. POWELL       *       NO. 2021-CA-0385

VERSUS       *

      COURT OF APPEAL

STATE BOARD OF       *
CERTIFIED PUBLIC       FOURTH CIRCUIT
ACCOUNTANTS OF       *
LOUISIANA       STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-07878, DIVISION "L"
Honorable Kern A. Reese, Judge
* * * * * *
**Judge Regina Bartholomew-Woods**
* * * * * *
(Court composed of Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins, Judge
Regina Bartholomew-Woods)

**JENKINS, J., CONCURS IN THE RESULT**

Jason R. Anders
Anders Law Firm
650 Poydras Street, Suite 1400
New Orleans, LA 70130


      COUNSEL FOR THOMAS B. POWELL/APPELLANT


Eric Derbes
Bryan J. O'Neill
THE DERBES LAW FIRM, L.L.C.
3027 Ridgelake Dr
Metairie, LA 70002


      COUNSEL FOR STATE BOARD OF CERTIFIED PUBLIC
      ACCOUNTANTS OF LOUISIANA/APPELLEE

**AFFIRMED; ANSWER TO APPEAL DENIED**
**December 22, 2021**

*RBW*

*RML*

This administrative case comes before us on judicial review.  Plaintiff Thomas Powell ("Mr. Powell") filed a petition for review in the Civil District Court for the Parish of Orleans, seeking review of the final decision of the State Board of Certified Public Accountants of Louisiana (the "Board"), in which the Board determined that Mr. Powell was in violation of La. R.S. 37:79, La. R.S. 37:83, and La. Admin. Code Title 46:XIX §1707.  After a hearing, the trial court affirmed the decision of the Board.  It is from this affirmation that Mr. Powell now appeals.  For the reasons that follow, we affirm the Board's decision, as well as deny the Board's request to tax costs and award attorneys' fees.

### *FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

Thomas Blanchard Powell was certified as a Certified Public Accountant ("CPA") on January 30, 1987.  Mr. Powell's license to practice expired on

December 31, 1994. The firm's permit for the entity "Thomas Blanchard Powell, CPA," also expired on December 31, 1994. Mr. Powell neither renewed his license to practice, nor his firm's permit. According to the Louisiana Secretary of State, Mr. Powell registered the company Thomas B. Powell, CPA, Inc., on February 5, 2002. The last annual report for that company was filed on May 12, 2014.

On January 24, 2019, the Board received a complaint (the "Complaint") against Mr. Powell filed by Raymond and Phyllis Loupe (the "Loupes"). The Complaint alleged that Mr. Powell, through his company, Thomas B. Powell, CPA, Inc., was hired to prepare and file the Loupes' 2013, 2014, and 2016 federal and state personal and business tax returns. The Complaint further alleged that Mr. Powell failed to file their personal state tax returns and did not include their self-employment income information ("Schedule C income") on their personal federal tax returns, even though the Loupes provided him with that information. The Complaint states that the Loupes were required to hire another CPA to correct the returns, owed significant additional tax liability on the unreported income, and were subject to penalties and interest by the Internal Revenue Service ("IRS") and the Louisiana Department of Revenue.

An administrative hearing on the matter was scheduled for July 22, 2020. Prior to the hearing, Mr. Powell and counsel for the Loupes proposed a consent order to settle the matter. The proposed consent order was subject to Board approval; however, after the Board deliberated, it concluded it did not have

sufficient information to determine the adequacy of the proposed consent order. Immediately thereafter, the hearing on the Complaint commenced without objection by Mr. Powell.

John Morgan, the Board's investigator, and Mr. Powell testified at the administrative hearing. Mr. Powell admitted that his license to practice along with his firm permit for Thomas Blanchard Powell, CPA, Inc., expired December 24, 1994. He admitted that he knew both his license and firm permit had expired and that he did not renew either one. Mr. Powell testified that, in 2002, he created the corporation Thomas B. Powell, CPA, Inc. He stated that at the time, he was working for a physician, preparing tax returns.[1] He testified that he created the company not as a "public accounting firm per se" but "merely as a tax entity." He acknowledged that he did not apply for a permit because he knew he could not get one. Nevertheless, Mr. Powell admitted that the name Thomas B. Powell, CPA, Inc., appeared on the invoices he sent to the Loupes. When asked about the invoices and whether a client would reasonably believe that he was a CPA, Mr. Powell answered in the affirmative. Mr. Powell testified that he did not have a bank account for Thomas B. Powell, CPA, Inc., and therefore his invoices included a notation that checks should be made payable to Thomas B. Powell.

Mr. Powell further testified that the email address he used to communicate with the Loupes was tommycpa@bellsouth.net. He stated that his email address was created in 2000. He stated that initially he had difficulty creating a unique

---

[1] Mr. Powell indicated that although he prepared the tax returns for the physician, he did not sign them.

identification for his email address and called his service provider for assistance in setting up his email account. He explained that "cpa" was merely added to establish an email address with a unique identifier. He testified that tommycpa@bellsouth.net is the only email address he has ever had, which he used for both personal and business purposes.

Mr. Powell acknowledged that the Loupes hired him to prepare the federal and state tax returns for years 2013, 2014, and 2016. He testified that he submitted prepared federal tax returns which did not include Schedule C income. Mr. Powell explained he believed there were deductions that the Loupes were entitled to, but he did not have all the information he needed at the time to support the deductions. Thus, in order to limit the Loupes' exposure to penalty fees associated with a late filing, Mr. Powell knowingly omitted the Schedule C income from the tax returns with the intention to amend them at a later date once he had the information to support the deductions. He testified that he knowingly gave the tax returns to the Loupes to file with the IRS with the omission of the Schedule C income. Mr. Powell testified that this practice continued for tax years 2013, 2014, and 2016. Additionally, Mr. Powell admitted that he did not file the Loupes' state income tax returns because he knew the federal income tax returns would change once he amended them to reflect the deductions he believed the Loupes were entitled to. Mr. Powell testified that the Loupes were aware of the status of their tax returns, what was included, and what was omitted.

Mr. Powell also admitted to using an IRS Preparer Tax Identification

Number ("PTIN") from 2014 through 2019, despite not timely completing the competency test or continuing education classes required to maintain a valid PTIN.

After considering the testimony and evidence presented at the hearing, the Board issued its final decision on August 20, 2020. The Board made the following determinations: (1) Mr. Powell's admitted failure to timely prepare the Loupes' 2013, 2014, and 2016 state income tax returns and his failure to include the Loupes' Schedule C income on the 2013, 2014, and 2016 federal income tax returns constituted violations of La. R.S. 37:79(A)(4); (2) Mr. Powell's continued use of an invalid IRS PTIN from 2014 through 2019 constituted a violation of La. R.S. 37:79(A)(7); (3) Mr. Powell's use of the CPA title in his email address, while not holding a valid, active Louisiana CPA license constituted a violation of La. R.S. 37:83(C); and (4) Mr. Powell's use of the company name Thomas B. Powell, CPA, Inc., from 2002 through 2017, constituted a violation of La. R.S. 37:83(D).

Thereafter, Mr. Powell filed a petition for review of the Board's final decision in the trial court. A hearing on the petition was held, and the trial court affirmed the Board's final decision on April 19, 2021. The Board subsequently filed a motion to tax costs and award attorneys' fees in conjunction with the trial court proceeding, which the trial court denied. It is from the trial court's affirmation of the Board's final decision that Mr. Powell files the instant appeal.

### STANDARD OF REVIEW

"[A] person who is aggrieved by a final decision or order in an adjudication proceeding is entitled to judicial review" pursuant to the Administrative Procedure

Act. La. R.S. 49:964(A)(1). The scope of our appellate review is governed by the same provisions as those for the trial court. *See* La. Const. art. 5, §10(B); La. R.S. 49:964(G). "The court may affirm the decision of the agency or remand the case for further proceedings." *Id*. In *Davis v. State Bd. of Certified Pub. Accts. of La.*, 13-0514 (La. App. 4 Cir. 12/18/13), 131 So.3d 391, this Court explained:

> A reviewing court may reverse or modify an agency's findings, inferences, conclusions, or decisions "if substantial rights of the appellant have been prejudiced" because the agency's findings, inferences, conclusions, or decisions are "[n]ot supported and sustainable by a preponderance of evidence as determined *by the reviewing court*." La. R.S. 49:964 G(6) (emphasis added). "In the application of this rule, the court shall make *its own determination and conclusions of fact* by a preponderance of the evidence based upon *its own evaluation* of the record reviewed in its entirety upon judicial review." *Ibid.* (emphasis added). But also, "[i]n the application of this rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of the demeanor on the witness stand and the reviewing court does not, *due regard* shall be given to the agency's determination of credibility issues." *Ibid.* (emphasis added). We also give deference to agency determinations of questions of law and mixed questions of law and fact which the agency has been charged to answer as well as the judgments of agencies upon the professional behavior of a member of the profession which the agency is charged to oversee.

*Id.*, 13-0514, p. 5-6, 131 So.3d at 395. We further noted that "[a] reviewing court may also reverse or modify an adjudication if the agency's holding was 'arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.'" *Id.*, 13-0514, p. 6, 131 So.3d at 395 (quoting La. R.S. 49:964(G)). Finally, a reviewing court may reverse or modify the agency's findings if:

substantial rights of the appellant have been prejudiced because the agency's findings are (1) in violation of constitutional or statutory provisions, (2) in excess of the statutory authority of the agency, (3) made upon unlawful procedure, or (4) affected by other error of law. *See* La. R.S. 49:964 G(1)-(4). These grounds present questions of law, and are reviewed *de novo*—without any deference to the agency or the district court as the first court of review. *See Carpenter*, 05-1904[,] p. 5, 944 So.2d at 608.

*Id.*, 13-0514, p. 6-7, 131 So.3d at 395-96.

## *DISCUSSION*

On judicial review with this Court, Mr. Powell raises two assigned errors: (1) his due process rights were violated because he was not provided an impartial decision maker as part of the administrative process; and (2) the Board's finding of alleged fraud is not supported by the evidence. We first address Mr. Powell's due process claim.

### *Due Process*

Mr. Powell argues that his due process rights were violated when he was required to submit to a full hearing immediately after proposing a consent order where he acknowledged certain adjudicative facts and violations before the same Board. Mr. Powell claims his rights were substantially prejudiced because the Board had advanced knowledge of the adjudicative facts, and as a result, the Board was no longer impartial.

La. R.S. 49:960(B) states in pertinent part:

> [a]ny party may request the disqualification of a subordinate deciding officer or agency member, on the ground of his inability to give a fair and impartial hearing, by filing an affidavit, *promptly upon discovery of the alleged disqualification*, stating with particularity

> the grounds upon which it is claimed that a fair and impartial hearing cannot be accorded.

*Id.* (Emphasis added). A review of the record demonstrates that neither Mr. Powell, nor his counsel sought recusal or objected to any of the Board members presiding over his case. Similarly, Mr. Powell did not waive or object to the hearing taking place. Mr. Powell did not raise his concerns regarding the Board's alleged bias at any point during or prior to the commencement of the full hearing, nor did Mr. Powell address the matter prior to the issuance of the Board's final decision. Mr. Powell raised the issue of impartiality for the first time on judicial review. In accordance with La. R.S. 49:960(B), Mr. Powell failed to promptly raise the constitutional issue. *See Kelley Blue Book Co., Inc. v. La. Motor Veh. Comm.*, 16-281, p. 16 (La. App. 5 Cir. 12/7/16), 204 So.3d 1139, 1151.

Even if Mr. Powell properly raised the constitutional issue, we find his argument lacks merit. "[A] strong presumption of honesty and integrity exists in those serving as adjudicators." *Kelley Blue Book Co.*, 16-281, p. 16, 204 So.3d at 1151-52 (citing *Butler v. Dep't of Pub. Safety & Corr.*, 609 So.2d 790, 793 (La. 1992)). In *Butler*, the Louisiana Supreme Court explained:

> An impartial decisionmaker is essential to an administrative adjudication that comports with due process, even if de novo review is available. *Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); *Ward v. Village of Monroeville, Ohio*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Matter of Rollins Environ. Services, Inc.*, 481 So.2d 113 (La.1985); *Wilson v. City of New Orleans*, 479 So.2d 891 (La.1985). To this end, the state Administrative Procedure Act attempts to prevent partiality or bias in adjudicative settings by prohibiting

> ex parte consultations and requiring recusal of
> subordinate deciding officers or agency members from
> proceedings in which they cannot accord a fair and
> impartial hearing or consideration. La. R.S. 49:960
> (1987). See also 5 U.S.C. §§ 556–57 (1977 & Supp.
> 1992). The federal Administrative Procedure Act
> similarly attempts to avoid potential bias or prejudice in
> adjudications by providing that no employee engaged in
> investigating or prosecuting may also participate or
> advise in the adjudicating function. 5 U.S.C. § 554(d)
> (1977).

*Id.*, 609 So.2d at 793.

Mr. Powell claims that "[t]he agreed admission to adjudicative facts and violations amounts to a prejudgment of the adjudicative facts in dispute that were presented to the Board at the full hearing." In other words, Mr. Powell avers that the Board was no longer an impartial decisionmaker because the Board had advanced knowledge of the facts prior to the administrative hearing. Mr. Powell cites *Matter of Rollins Environ. Servs., Inc.*, 481 So.2d 113 (La. 1985), as support for his contention that the Board prejudged the adjudicative facts. However, we find that Mr. Powell's reliance on *Rollins* is misplaced.

In *Rollins*, after receiving a community complaint of noxious odors at a hazardous waste disposal facility, the secretary for the Department of Environmental Quality visited the facility to investigate the incident. *Id.*, 481 So.2d at 115. Based on the conditions observed, the secretary ordered the immediate shut down of the facility's incinerator. *Id.* The secretary subsequently made several public statements, indicating that she was determined to permanently close the facility. *Id.* The secretary's statements led Rollins, the waste facility operator, to believe that the secretary had already decided that violations existed

9

and that the appropriate penalty would be to terminate their permit to conduct business in the state. *Id.*, 481 So.2d at 115-16. Rollins, therefore, sought a writ of certiorari to require the secretary to recuse herself from participation in the adjudication proceedings.

The *Rollins* Court held that "disqualification is appropriate for the administrative decision maker who has prejudged the adjudicative facts in dispute." *Id.*, 481 So.2d at 120. Consequently, the inquiry becomes "whether the administrative officer has in some measure judged the facts in advance of hearing the case." *Id.*, 481 So.2d at 116 (citation omitted). The Supreme Court was careful to point out that there is a marked distinction "between an advance commitment about the facts and some previous knowledge about the facts." *Id.*, 481 So.2d at 121. Thus, "mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the board members at a later adversary hearing." *Id.*, 481 So.2d at 120-21 (internal citations omitted).

Although the secretary's "investigative function with regard to Rollins (mere exposure to the evidence) would not alone require recusal," the Supreme Court stated that it was required to consider whether she had prejudged the facts in dispute. *Id.*, 481 So.2d at 116. The Supreme Court concluded that because of her public statements, it would be "practically impossible for a disinterested observer to conclude" that she had not prejudged the facts in dispute, and therefore, ordered

the secretary recused from participation in the adjudication proceedings against Rollins. *Id.*, 481 So.2d at 121.

*Rollins* is distinguishable from the case at bar. Unlike *Rollins*, there is no evidence in the record or argument presented that suggests that the Board was partial, bias, or unfair. Mr. Powell relies solely on the fact that the Board had prior knowledge of the facts as presented in the proposed consent order immediately prior to the administrative hearing. *See also Hall v. State ex rel. Dep't of Pub. Safety & Corrections*, 98-0726, p. 11 (La. App. 1 Cir. 4/1/99), 729 So.2d 772, 778 (citing *Rollins*, 481 So.2d at 120) ("one is not disqualified as an impartial decisionmaker simply by prior exposure to adjudicative facts"). Moreover, it is well-established that administrative agencies often "receive the results of investigations, to approve the filing of charges or formal complaints instituting enforcement proceedings, and then to participate in the ensuing hearings. This mode of procedure does not violate the Administrative Procedure Act, and it does not violate due process of law." *Withrow v. Larkin*, 421 U.S. 35, 56, 95 S.Ct. 1456, 1469, 43 L.Ed. 2d 712 (1975).

Here, the Board was called upon to decide whether to accept or reject the proposed consent order. The facts elicited as part of the proposed consent order were facts the Board learned of in their adjudicative capacity. If we were to adopt Mr. Powell's argument, it would have a limiting effect on an agency's statutory authority to interpret and enforce its own regulations. The Board could never hear a proposed consent order before a hearing. If it did, then the Board could not proceed with the hearing because it had prior knowledge of the adjudicative facts.

For this reason, as previously mentioned, our jurisprudence has recognized that in considering an alleged due process violation, "a line has been drawn between an advance commitment about the facts or a personal stake in the outcome of an adjudication and the mere combination of functions within a single administrative body." *Butler*, 609 So.2d at 795 (citation omitted); *Rollins*, 481 So.2d at 121.

Mr. Powell's due process rights were not violated simply because the facts were known to the Board prior to the hearing. Mr. Powell has failed to present any evidence that would indicate any member of the Board had prejudged the administrative proceeding or that indicated a personal bias. The Board's mere exposure to the facts at issue, as part of the proposed consent order, does not indicate a prejudgment of the adjudicative facts. Simply because the Board had advanced knowledge of the facts prior to the hearing does not warrant a finding by this Court that Mr. Powell's due process rights were violated. We find no merit to this assignment of error.

*Fraud*

In his second assignment of error, Mr. Powell alleges that there is insufficient evidence to support the Board's finding of alleged fraud. Specifically, Mr. Powell claims the Board's findings of fraud are not supported by any evidence or testimony by the Loupes of an intent to defraud, reliance, or inducement.

"Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may result from silence or inaction." La. C.C. art. 1953. "Two elements are necessary to prove fraud: (1) an intent to defraud and (2) actual or potential loss or damage." *Sun Drilling Products Corp. v. Rayborn*, 00-1884, p. 15-16 (La. App. 4 Cir. 10/3/01), 798 So.2d 1141, 1152 (citing

12

*Williamson v. Haynes Best Western of Alexandria*, 95-1725, p. 83 (La. App. 4 Cir. 1/29/97), 688 So.2d 1201, 1239). "[F]or fraud or deceit to have caused [a complainant's] damage, he must at least be able to say that had he known the truth, he would not have acted as he did to his detriment." *Sun Drilling*, 00-1884, p. 16, 798 So.2d at 1153. "Whether this element is labeled reliance, inducement, or causation, it is an element of a [complainant's] case for fraud." *Id.* "Fraud need only be proved by a preponderance of the evidence and may be established by circumstantial evidence." La. C.C. art. 1957.

The Loupes alleged that Mr. Powell committed fraud because he accepted money from them and led them to believe that he would be preparing their federal and state tax returns. At the administrative hearing, the Loupes did not testify; nevertheless, the Board's final decision found Mr. Powell in violation of La. R.S. 37:79(A)(4) for: (1) his failure to timely prepare the Loupes' 2013, 2014, and 2016 state income tax returns; and (2) his failure to include the Loupes' Schedule C income information on the 2013, 2014, and 2016 federal income tax returns.[2]

La. R.S. 37:79(A)(4) states:

> After notice and a hearing as provided for in R.S. 37:81, the board may revoke any certificate, permit, or privileges granted pursuant to the provisions of R.S. 37:94, or suspend for a period of not more than five years or refuse to issue or renew any certificate or permit, or reprimand, censure, or limit the scope of practice of any licensee or individual granted privileges as provided by R.S. 37:94, or impose an administrative fine not to exceed two thousand dollars per violation, or place any licensee or individual granted privileges as provided by R.S. 37:94 on probation, all with or without terms,

---

[2] In the section entitled "Conclusions of Law," the Board's final decision sets forth, individually, the factual basis for each violation it found. Below each finding of fact, the Board quotes the applicable statutory language. The Board does not state specifically what portion of the statute it found Mr. Powell violated.

conditions, and limitations, for any one or more of the following reasons:

(4) Dishonesty, fraud, or gross negligence in the performance of services while holding a certificate, license, privilege, or in the filing or failure to file that individual's own income tax returns.

In *Davis*, the accountant sought review of the Board's order revoking his CPA license. Mr. Davis provided accounting and tax preparation services for the Magee family and its pharmacy business. *Id.*, 13-0514, p. 8, 131 So.3d at 396. When the Magees decided to expand their business to open multiple drugstores, Mr. Davis became a partner in the business venture. *Id.* In exchange for part ownership or equity interest, Mr. Davis provided professional in-house accounting services, which included forming businesses, bookkeeping, maintaining the check book and general ledger, and preparing financial statements in addition to sales and income tax returns. *Id.* Mr. Davis also prepared the personal income tax returns for his business partners. *Id.* When the Magees hired an outside CPA to provide a fair market valuation of the business entities, it was discovered that there were "material differences between the amounts of income, expenses, assets, and liabilities in compiled financial statements and income tax returns." *Id.*‚ 13-0514, p. 8, 131 So.3d at 396-97. Mr. Davis was terminated, and a complaint was filed.

In revoking Mr. Davis' license, the Board made numerous findings of fact and concluded that Mr. Davis, on more than one occasion, violated La. R.S. 37:79(A)(4), (5), (7), (8), (11), and (12); La. R.S. 37:83; and Chapter XIX of Section 46 of the Louisiana Administrative Code. *Id.*, 13-0514, p. 7, n. 3, 131 So.3d at 396, n.3. The Board determined that Mr. Davis engaged in conduct that at different times was dishonest, fraudulent, or grossly negligent, and failed to meet the standards of professional conduct expected of certified public accountants. In

14

particular, the Board found Mr. Davis acted with gross negligence when the financial information Mr. Davis provided to the outside CPA was not prepared in accordance with Mr. Davis' professional obligations and could not be relied on for the purpose of conducting a business valuation. *Id.*, 13-0514, p. 9, 131 So.3d at 397. It further found Mr. Davis improperly structured the ownership of certain businesses through entities owned by Roth IRAs, which the IRS considers an abusive tax shelter. *Id.*, 13-0514, p. 11, 131 So.3d at 398. In doing so, Mr. Davis failed to inform his business partners that "these positions were risky or aggressive, subjecting them to the possibility of adverse action by the IRS." *Id.* The Board found his failure to inform his partners of their exposure to the potential risks or penalties they could face, should the IRS take adverse action, constituted gross negligence. Additionally, the Board found Mr. Davis' underreporting of sales and taxes that resulted in the company paying penalties and interest constituted gross negligence. By contrast, Mr. Davis was also found to have appropriated funds of the entity without agreement of the partners, paid money to his sister without agreement of the partners, and hid his self-dealing by manipulating the company's records. The Board found Mr. Davis' conduct both dishonest and fraudulent. Likewise, Mr. Davis committed fraud when he "forged the signature on a tax return, and as a notary, improperly executed several documents filed with the Secretary of State of Louisiana related to the entities formed by Mr. Davis." *Id.*, 13-0514, p. 12, 131 So.3d at 398-99. This Court affirmed the Board's decision to revoke Mr. Davis' license as the evidence was sufficient to support the Board's determination that Mr. Davis, among other violations, violated La. R.S. 39:79(A)(4).

Unlike in *Davis*, the Board does not specify whether Mr. Powell's conduct,

15

under La. R.S. 39:79(A)(4), was dishonest, fraudulent, or grossly negligent. At the administrative hearing and on judicial review, counsel for Mr. Powell argued that the evidence was insufficient to support a violation of La. R.S. 39:79(A)(4) based on dishonesty or fraudulent behavior. We examine next why we conclude the evidence is insufficient insofar as the Board found Mr. Powell's conduct relative to his violation of La. R.S. 39:79(A)(4) was dishonest and/or fraudulent.

First, the Loupes did not testify at the administrative hearing. Consequently, there is no testimony as to their alleged reliance on any representation Mr. Powell may have made with respect to their federal and state tax returns. Mr. Powell readily admitted that he did not include the Loupes' Schedule C income on the federal tax returns and did not prepare their state tax returns. In its appellee brief, the Board makes much of the fact that Mr. Powell testified that his actions were intentional. The question, however, is whether his intent was to defraud the Loupes.

The testimony and evidence in the record demonstrates that to limit the Loupes' exposure for a late filing, Mr. Powell prepared the tax returns without the Schedule C income, with the intent that he would file an amendment once he had the information he needed to account for the deductions he believed the Loupes were entitled. He testified that the Loupes were aware of his plan, which is evidenced in email correspondence between the parties that was submitted at the hearing. Mr. Powell also testified he did not file the state tax returns because he knew that once the federal tax returns were amended, the state tax returns would change. Mr. Powell stated that he waited to file the state tax returns, because he found it "unconscionable" to charge a client for the preparation of a return, only to amend it and charge the client again. Notably, Mr. Powell testified that he had "no

16

idea" that it would take so long to obtain the information he needed to amend the tax returns. He stated "what I should have done [was] to put a statement in the return that said, 'this return has been prepared with the best information we have and most complete information at the time. It will be amended."

The uncontroverted evidence presented at the administrative hearing demonstrates that Mr. Powell's failures in the preparation of the Loupes' tax returns arose from an attempt to further limit the Loupes' tax exposure after their previous CPA's failures left them with significant tax liability. Likewise, the only evidence presented at the hearing was that the Loupes were aware of the fact that the federal tax returns needed to be amended, and in order to do so, Mr. Powell needed additional information. There was no evidence to suggest that the Loupes were not aware of the strategy to amend the tax returns, the status of their tax returns, the contents of those returns, or the need for amendments. Because Mr. Powell's failures arose from an attempt to limit the Loupes' tax liability and the Loupes were aware of Mr. Powell's plan, we find Mr. Powell's conduct does not comport with a finding of dishonesty or fraud. To the extent the Board's conclusions of law found, pursuant to La. R.S. 37:79(A)(4), dishonesty and/or fraud relating to Mr. Powell's preparation of the tax returns, the Board's findings are contrary to the evidence presented.[3]

Nevertheless, we are cognizant of the plain language of La. R.S. 37:79(A)(4) and its statutory construction. In general, "unless the context clearly indicates otherwise: (1) [t]he word "and" indicates the conjunctive; (2) [t]he word "or"

---

[3] The Appellee's brief points to the fact that Mr. Powell admitted that the "CPA" designation appeared in his email address, on invoices, and in his company name despite his license having expired as proof of Mr. Powell's intention to commit fraud. However, a review of the Board's final decision does not identify any of these actions as a violation of La. R.S. 39:79(A)(4). By comparison, the Board found the use of an invalid PTIN was a violation of La. R.S. 39:79(A)(7).

17

indicates the disjunctive; and (3) [w]hen the article is phrased in the disjunctive, followed by the words "or both", both the conjunctive and disjunctive are intended." La. C.C.P. art. 5056. The statute is written in the disjunctive form. Considering we find the evidence insufficient to find Mr. Powell's conduct was dishonest or fraudulent relative to the preparation of the tax returns, the question becomes whether Mr. Powell's conduct was grossly negligent.

"Gross negligence has a well-defined legal meaning, which is distinctly different from the definition of ordinary negligence." *Brown v. Lee*, 05-1302, p. 5 (La. App. 4 Cir. 4/5/06), 929 So.2d 775, 778 (quoting *Pierre v. Zulu Social Aid & Pleasure Club, Inc.*, 04-0752, p. 5 (La. App. 4 Cir. 9/29/04), 885 So.2d 1261, 1264). "Gross negligence has been defined as the want of even slight care and diligence and the want of that diligence which even careless men are accustomed to exercise." *Id.*, 05-1302, p. 5, 929 So.2d at 778 (quoting *Pierre*, 04-0752, p. 5-6, 885 So.2d at 1264 (internal quotations omitted)).

Mr. Powell admitted that he did not include the Loupes' Schedule C income on the federal tax returns and did not prepare their state tax returns. In his deposition testimony, Mr. Powell acknowledged that he had the information he needed to prepare the Loupes' tax returns but did not do so to avoid more work for himself in the future when he anticipated he would amend the tax returns. Mr. Powell conceded that he could have attached a statement indicating the tax returns were prepared with the best information available at the time and that the returns would be amended. Mr. Powell stated that while inclusion of the aforementioned statement is what he should have done, he did not because he anticipated that he would be amending the tax returns in "short order." Moreover, the evidence and testimony demonstrate that the Loupes were aware of the status of their tax returns,

18

what was included, and what was omitted. Mr. Powell's admitted strategy to omit the Schedule C income from the tax returns until he had the necessary information to file amendments was ill-advised and poor decision-making.

In the same way the accountant in *Davis* failed to warn his clients of potential risks associated with certain tax positions, Mr. Powell recommended and implemented a filing strategy, yet he failed to warn of the penalties the Loupes might face if the tax returns, he advised them to file, were not amended in a timely manner. As Mr. Powell admitted, there were actions he could have taken to mitigate those risks. His failure on both accounts supports finding him grossly negligent in the performance of his professional obligations. Moreover, because La. R.S. 39:79(A)(4) is written in the disjunctive form, evidence sufficient to support any of the three—dishonesty, fraud, or gross negligence—will suffice as a violation of the statute. While we do not find the evidence sufficient to prove Mr. Powell's conduct was dishonest or fraudulent, we do find Mr. Powell's actions were grossly negligent. Therefore, the Board's ultimate finding that Mr. Powell violated La. R.S. 39:79(A)(4) still stands.

*Answer*

The Board also filed an answer to the appeal in this case, seeking an award of costs and attorney's fees for the appeal proceedings, including the appeal taken in the trial court. The Board relies on La. R.S. 37:79(B)(3), which states:

> [i]n lieu of or in addition to any remedy provided for in Subsection A of this Section, the board may require a licensee or privilege holder to…[p]ay all costs of *board proceedings*, including but not limited to investigation fees, stenographer fees, witness fees or reimbursements, and attorney fees involved in the imposition of a remedy pursuant to this Section.

*Id*. (emphasis added).

"Statutes providing for penalties and attorney's fees are penal in nature and must be strictly construed." *Alexander v. Centanni*, 11-0783, p. 4 (La. App. 4 Cir. 11/16/11), 80 So.3d 590, 592 (citing *Adams v. Burger King*, 04-0146, p. 6 (La. App. 1 Cir. 2/11/05), 906 So.2d 540, 544). The statute states that the board may require the licensee to pay costs of *board proceedings*. In that the statute is penal in nature, it is to be strictly construed. "The settled doctrine of statutory construction *Expressio Unius est Exclusio Alterius* dictates that when the legislature specifically enumerates a series of things, the legislature's omission of other items, which could have easily been included in the statute, is deemed intentional." *Jackson v. City of New Orleans*, 12-2742, p. 13, n. 8 (La. 1/28/14), 144 So.3d 876, 888, n. 8 (citations omitted). Additionally, other sections of the statute contemplate the instances in which an award of fees and costs for district court proceedings are permitted. We do not interpret La. R.S. 37:79(B)(3) to include appellate proceedings among the costs the Board may require Mr. Powell to pay. In that the subsection the Board relies on only mentions board proceedings and other sections contemplate an award for fees and costs in trial court proceedings, we decline to expand the meaning of La. R.S. 37:79(B)(3) to include fees and costs of appellate proceedings in the trial court or in this Court. Therefore, the Board's answer to the appeal and request for fees and costs is hereby denied.

### *CONCLUSION*

Based on the foregoing reasons, we find the Board's prior knowledge of the adjudicative facts and violations, as presented in the proposed consent order, do not rise to the level of a violation of Mr. Powell's due process rights. Additionally,

we find the evidence insufficient to establish dishonesty or fraud, pursuant to La. R.S. 37:79(A)(4), as it relates to Mr. Powell's failure to timely prepare the Loupes state tax returns and failure to include their Schedule C income on their federal tax returns. We nevertheless find the evidence sufficient to prove Mr. Powell acted with gross negligence. Finally, we find that La. R.S. 37:79(B)(3) does not allow for an award of fees and costs associated with appellate proceedings in the district court or the appellate court.

## *DECREE*

Accordingly, we affirm the Board's decision. Furthermore, the Board's request for fees and costs as set forth in its answer to the appeal is denied.

**AFFIRMED;**
**ANSWER TO APPEAL DENIED**